233 S.W.2d 48 (1950)
GARVEY
v.
GARVEY.
No. 21410.
Kansas City Court of Appeals, Missouri.
October 2, 1950.
Ellis Beavers, Joe Beavers, Grant City, for appellant.
Joseph M. Garvey, St. Joseph, for respondent.
CAVE, Judge.
This is an appeal by plaintiff, Jean Garvey, from an order overruling her motion to modify a divorce decree which awarded her the custody of her infant child Nancy. The motion sought permission to take the child out of the State of Missouri.
Plaintiff and defendant were married November 30, 1946, and separated May 4, 1949, and plaintiff filed a petition for divorce on May 11 of the same year; Nancy was then five weeks old. On July 29 plaintiff was granted a divorce and awarded the custody of Nancy and the defendant was required to pay the sum of $40 a month for the support of the child and $10 a month by way of alimony; the decree also provided that the defendant should have the right to visit the child on all proper occasions and to have its custody from seven *49 o'clock to nine o'clock two evenings each week and on Sundays from two o'clock to six o'clock p. m.
On August 30 defendant had plaintiff cited for contempt for failure to comply with the provisions of the decree granting him the privilege of visitation and the custody of the child at certain hours. After a hearing the court found plaintiff guilty of contempt but deferred sentence. Pending the contempt proceedings plaintiff and defendant each filed a motion to modify the decree concerning the custody of the child. Plaintiff's motion sought to restrict defendant's right to take their child from her home to once a week, on Sunday afternoon; defendant's motion requested the court to designate Tuesday and Thursday nights of each week as the nights of visitation. Plaintiff's motion was overruled and defendant's motion was sustained and the court modified the decree so that the defendant could have the right of visitation on Tuesday and Thursday nights of each week between the hours of seven and nine, and to have the custody of the child on Sunday afternoon between the hours of two and six. There was no appeal from this order. On November 10, 1949, plaintiff filed the motion now under consideration.
At the conclusion of the evidence the court made certain findings which are so abundantly supported by the evidence and the law, that we copy such findings:
"This application is by plaintiff for permission to take the minor child of plaintiff and defendant from the State of Missouri.
"The removal of the child from the state will not be denied if the best interests of the child would be served thereby.
"In this case, the mother (petitioner herein) is living with her mother who is receiving $125 per month salary, plus some other payment by way of annuities. Plaintiff receives the sum of $40 per month for support of the child and $10 per month alimony from the defendant ex-husband.
"Plaintiff requests permission to remove the child from this state because of proffered employment in Waterloo, Iowa, and Peoria, Illinois. The distance from St. Joseph to Waterloo is reckoned as approximately 260 miles. The distance from St. Joseph to Peoria would be considerably more.
"Plaintiff is shown to be a competent secretary and office supervisor and is offered such position in other states.
"She states she was referred by an employment agency to two positions here which would have paid approximately $125 to $140 per month but that she did not interview the prospective employers and that she was not ready to go to work at that time.
"Mr. Glenn, of the Platt-Gard College testified that there were numerous vacancies (in St. Joseph, Missouri,) for employees qualified as plaintiff is, and that salaries for such positions would range approximately from $175 to $200 per month; also that there were vacancies for secretaries with salaries ranging approximately from $135 to $150 per month.
"Plaintiff states that in Waterloo, Iowa, she could obtain employment at about $51 per week.
"The sole question is whether or not the best interests of the minor child will be served by permitting the plaintiff to remove it from the State of Missouri. This would not be a temporary removal as were the facts in some of the cases cited, but for all practical purposes it would be a permanent removal.
"Under the order of the Court now, the defendant is permitted to have the child three times per week. If the child is taken to either Waterloo, Iowa, or Peoria, Illinois, it will, of course, be impractical for the plaintiff to return said child to St. Joseph for these visitations by the child's father, or for the father to visit the child.
"The defendant offers to take the child into the home of his parents (which he states is with the full consent of his mother) during the daytime and care for said child and return it to the mother each evening when she quits work if she takes employment in St. Joseph. If the plaintiff takes the child to another state it will either be necessary for the mother, with whom plaintiff resides, to cease her employment to look after the child or for someone *50 to be employed to care for the child during the time the plaintiff and her mother are at their employment.
"It may be that plaintiff would obtain more remunerative employment in Waterloo or Peoria. However, from the testimony of Mr. Glenn, it would appear that the difference between the amount which could be obtained in St. Joseph would be very small.
"While the Courts recognize that a small child should be with its mother as much as possible, yet if the mother obtains employment either in or out of St. Joseph she would not have the child with her except at night and at such other time during the week as she would not be required to be at her place of employment. If the child is permitted to stay during the day at the home of the parents of the defendant, then plaintiff would be free to take employment in St. Joseph and her mother would also be permitted to continue earning a salary and thereby the combined income, plus the amount paid by the defendant would doubtless be much more than the amount which would be received if plaintiff moved from St. Joseph and either hired someone to look after the child or the mother quit her employment to care for it.
"Therefore, from a financial standpoint it appears to the Court that it would be much better for the plaintiff to remain in St. Joseph permitting the child to remain with its paternal grandmother during the day.
"In addition to this, and perhaps a more important matter is the fact that if the child is taken from the state it will be deprived of practically all contact and visitation with its father and its paternal grandparents. Even though the father and mother are estranged, the child should have an opportunity to be in the company of its parents and grandparents as much as possible, so that it may learn to respect and love them. This is, in the opinion of the Court, of vital interest to the minor child.
"It is, therefore, the opinion of this Court that the interests of the child would not be best served by its removal from the State of Missouri and that the welfare of the child requires that it remain in St. Joseph where it may be in the company of both parents and its grandparents.
"Both the welfare of the child and the financial condition of the mother would, the Court believes, be best served by the child's remaining in St. Joseph. * * *"
Under points and authorities plaintiff's brief makes four assignments of error, but her argument is based entirely on the proposition that the order of the court is contrary to the law and is erroneous because it is unreasonable and is not for the best interest of the child. We shall consider that preserved assignment.
The law controlling in cases of this character is well settled; that a minor child of divorced parents becomes the ward of the court which grants the decree; that the court's jurisdiction to determine where custody of the child shall go vests in such court to the exclusion of all others, and continues until the child attains its majority; that, in determining the respective claims of parents to the custody of a child, the welfare of the child itself will be the first consideration always to be kept in mind by the court; that the question of the child's own welfare is superior to the claim of either parent, whose wishes and personal desires must yield, if opposed to such welfare; and that the finding of the trial judge on motion to modify should not be lightly disturbed, and should, in fact, be deferred to, unless it is apparently in conflict with a clear preponderance of the evidence and discloses a manifest abuse of judicial discretion. Watkins v. Watkins, Mo.App., 230 S.W.2d 778; Salkey v. Salkey, Mo. App., 80 S.W.2d 735.
Plaintiff concedes there is no conflicting evidence in this case; therefore, can we say the trial court abused its discretion in denying plaintiff the right to take the child to another state?
Keeping in mind the considerations which are to govern our decision of the case, we cannot see how the child would be benefitted by removal to another state. The difference, if any, in the remuneration which plaintiff would receive by moving to Waterloo, Iowa, or Peoria, Illinois, cannot outweigh the advantages to the *51 child to grow up with the knowledge of who her father is, and to receive his love and affection. Her desire to accept a particular position far removed from her present home and friends does not control the question of the welfare of the child. From the whole record we are convinced that plaintiff has not made a serious effort to secure profitable and agreeable employment in St. Joseph. Without intending to be unduly critical of plaintiff, we are inclined to believe that her primary purpose in seeking employment without the state is prompted, at least in part, by her desire to remove the child beyond the influence of its father. We are unwilling to make an order which will accomplish such purpose.
Plaintiff relies on the following cases: Lane v. Lane, Mo.App., 186 S.W.2d 47; Tatum v. Davis, 144 Mo.App. 125, 128 S.W. 766; Meredith v. Krauthoff, 191 Mo.App. 149, 177 S.W. 1112; Sanders v. Sanders, 223 Mo.App. 834, 14 S.W.2d 458; Wells v. Wells, Mo.App., 117 S.W.2d 700; Nunnink, v. Nunnink, Mo.App., 257 S.W. 832.
In the first two cases the divorced wife had remarried and the new husband's duties required him to live in another state. Under such circumstances the court properly held it was for the best interest of the child to be with its mother and permitted its removal from the state. In the Krauthoff case the court permitted the removal of the child because of the particular facts in that case. Those three cases are not controlling here because of the vast difference in the facts and circumstances. The other cases cited by plaintiff announce the general rule that the welfare of the child is the paramount issue and the desires of the parents are secondary. We agree with that wholesome rule and believe it was wisely applied in this case.
It follows that the order appealed from should be affirmed. It is so ordered.
All concur.