259 S.W.2d 104 (1953)
FRAME
v.
BLACK.
No. 7155.
Springfield Court of Appeals. Missouri.
May 27, 1953.
Motion for Rehearing Overruled June 15, 1953.
Claude F. Cooper, Blytheville, Ark., for appellant.
Fred L. Henley, Von Mayes, Caruthersville, for respondent.
*105 VANDEVENTER, Presiding Judge.
This is an action by the defendant-mother in a divorce suit to modify the original decree relative to the care and custody of a child.
From a judgment modifying the original decree, plaintiff-father appealed. The application was filed the 6th day of June, 1952. It alleged that on the 21st day of August, 1950, the circuit court of Pemiscot County entered a decree of divorce in favor of plaintiff and against this defendant and made an order as to the custody of Rita Ann Frame, minor child of the parties, awarding the care and custody of said child to each of said parents for alternate months and provided further that if for any reason the mother of said child would be outside the State during any calendar month for which she was to have the custody, the child's maternal great-grandmother, Mrs. E. A. Shaw, of Caruthersville, should have such care, custody and control and that during the months when the mother was to have the care, custody and control of said child, or in her place, Mrs. Shaw, the plaintiff-father was to pay the sum of $25 per month.
It was then alleged that on or about the 16th day of November, 1950, the plaintiff-father filed a motion to modify the decree. The defendant-mother filed a motion to dismiss and a counter motion to modify said decree as to the custody of said child and upon a hearing on the 21st day of December, 1951, the court dismissed each of said motions and ordered the custody to remain as in the original decree. He further ordered plaintiff-father to pay $100 as suit money to the mother for defending the motion.
It was then alleged that Rita Ann Frame was born on the 4th day of July, 1946, was six years old at the time of the hearing and should begin attending school in September; that it was impractical and not to the best interests of the child that her care and custody continue to be divided between parents as provided in the original decree because of her need for continuous schooling. It was alleged that this defendant had remarried on the 21st day of October, 1950, to one Charles Black and was now residing in the suburbs of Los Angeles, California, that she and her husband owned their home, had ample room for the child, with convenient parks, playgrounds, churches and schools, that the child was subject to chronic colds, had on occasions been bothered with sinus trouble and that a child of her tender age needed the love and affection of her mother and that the California climate would be beneficial to her. That the present husband of defendant-mother was willing and had expressed a desire to have said child in his home in California and reared and educated in the atmosphere of a normal and happy home and should have the love, care and guidance of its mother.
It was further alleged that the plaintiff-father lives in Steele, Missouri, is employed in Blytheville, Arkansas and that such employment does not afford him ample opportunity to give said child in his home the necessary attention and guidance required by a female child of her age; that she spends much of her time in the home of her paternal grandparents who operate a store at Steele, Missouri, that the living quarters in the back end thereof are cramped, poorly ventilated, and not conducive to the health of said child; that said grandparents have living with them in said quarters a grown, unmarried son who also requires the attention of his parents; that the father of said child is in arrears in his payments of the amount awarded by the Court to defendant for the maintenance and support of said child and had not paid the $100 suit money for defending the motion to modify.
It was then asserted that if the custody was awarded to the mother, she would take the child to California but that she would return her to this state each year during the vacation months, so said child may continue to see, visit and know its father, but asks that the expense be paid by him.
A response was filed to this motion. It admitted the decree of divorce was obtained by plaintiff-father, the awarding of the custody for alternate months, the filing of the previous motion to modify, a counter reply and dismissal of each by the court. It admitted the assessment of the $100 suit *106 money, and the age of the child and that it would be impracticable to continue in effect the alternate monthly custody because she had reached school age and should be continuously in school. The answer further admitted that defendant-mother had married again and resided in California. Other allegations in the motion were denied.
It was then alleged that he had the child with him in a good home. It was well cared for, in fine surroundings conducive to pleasure, happiness and health, that he resided in a town of excellent school facilities, the ratings of which were the highest. That he lived within two blocks of a school and the child would be under direct surveillance of its elders as it went safely to and from school. That the child was in excellent health all the time it was in custody of plaintiff-father. That plaintiff had spent his life near Steele, Missouri, and that the child had lived there all its life, had its playmates and acquaintances and would be much happier there than among strangers, that if awarded to the mother, it would be taken to a strange country and beyond the jurisdiction of the court. That if left in the custody of the plaintiff-father, the child will continue to attend Sunday School and church, will be reared and brought up in good, clean, wholesome environment, conducive to good health and character building. Plaintiff-father then suggested that at the end of the school year and beginning of vacation the mother might have the care and custody of the child during that time, returning the same a reasonable time before the school year began to allow adjustment and proper preparation to enter the next term of school, but that the defendant-mother should execute a good and sufficient bond for the faithful return of said child to the jurisdiction of said court and said child should not be permitted to go out of the court's jurisdiction until the bond was given. It was further alleged that the defendant-mother had never taken the child anywhere but had left it with the child's great-grandmother during the time it was supposed to be in the care of its mother, that the defendant-mother's grandmother kept the child at a rooming house frequented by various and sundry persons of questionable character and that drunks lodged and congregated there. He prayed for a decree awarding the custody of said child to him during the school months and to its mother during vacation or as for such time as might appear proper to the court upon execution of the bond aforementioned and for such further and other relief as to the court might seem proper. No reply was filed to the response to the motion.
The defendant-mother's evidence showed that she had been divorced, as alleged in the application for modification, that prior to the divorce she had spent one month in California at the home of her mother and had the child with her. She returned to Pemiscot County when the divorce case was heard and immediately afterwards, leaving the child with its great-grandmother, she returned to California. In September, 1950, she first met her present husband and married him on the 21st of October, 1950, exactly two months after her divorce. By this marriage a child was born and another was soon to be born. She was 28 years of age, had been a Catholic but her new husband was a Lutheran. He had also been a Sunday School teacher in the Lutheran Church but had quit teaching about the time he married her. She had quit the Catholic Church and was attending church services in the Lutheran Church but did not attend Sunday School. Her husband was employed by Sears Roebuck & Company, and "barbered" some on Saturdays and Sundays. She had stayed in California since her re-marriage in 1950 and during the alternate months that she was to have care and custody of her child, it had not been with her but with its great-grandmother in Caruthersville. Apparently the child had been shuttled back and forth each month from father to great-grandmother, while the mother was living in California, raising another family. Her evidence showed that they had a new home in California, had bought it in a G. I. Housing development three months before, that it had a combination kitchen and dinette, a living room, a bath and three bedrooms; that it was on a lot 50 by 100, was one and one-half blocks from school, two blocks *107 from church, one mile from public playgrounds and that dentists, doctors, etc., were available. She further testified she had no intention of returning to Missouri. She admitted that her grandmother lived in a big rooming house at Caruthersville, kept several roomers, and that one of whom occasionally became drunk.
Her husband, Charles Black, testified that he was 44 years of age, had been employed six years at Sears Roebuck, was making about $70 per week, that the purchase price of their home was $9,800 with a G. I. loan on it for all except the down payment of $482. That the payments on his house were $55 per month, and that he owned one-half interest in two other small pieces of property. He stated that he was a Lutheran, had taught Sunday School in the Lutheran Church but had quit about two years ago. He had been married once before and his former wife was then, so far as he knew, living in Las Vegas, Nevada. He and his present wife were married in Las Vegas. He expressed a willingness to have the child come and live in their household and agreed to treat it as if it were his own. The only time he had seen the child was when he came to Missouri with his wife for this hearing.
The evidence on the part of the plaintiff-father showed that some seven months before the hearing, he had married a young lady from Caruthersville, about 19 years of age. They were living in a nice residential section of Steele, Missouri, near a church and within two blocks of an excellent school, where the child could attend without crossing a busy street. The home was well furnished with new furniture and all modern conveniences. His new wife was a fine housekeeper, displayed motherly affection for the child, kept her clean, took her to church and Sunday School, in fact, was taking the very best of care of her. Her father was regularly employed at Blytheville, Arkansas, by a radio station. Some weeks he made as much as $94 per week, but his average weekly wage was between $65 and $70. He worked every day but was home of a night. The evidence showed that the child was kept cleaner and better than she had been when she was living with her mother. During the months when the child was staying with her great-grandmother, her father and stepmother would go each Sunday and take her to church and return her. Her stepmother taught Sunday School, a children's class of boys ages 9, 10 and 11. There was no evidence at all that would reflect upon the father and stepmother of the child or their care and affection for her. The plaintiff-father admitted he was delinquent in some of his $25 payments and had not paid the $100 adjudged by the court for the defense of the first motion to modify.
The court rendered a decree modifying the custody, awarding it to her mother in California for the normal school year, that is from the 1st day of September, until the 31st day of May of each year, beginning September, 1952. The father was to have the care, custody and control for the normal school vacation months, that is from the 1st day of June until the 31st day of August, of each year, beginning June 1, 1953; that the father pay suitable transportation for said child and her care en route from the home of her mother to the home of her father each year for the normal school vacation months beginning June 1, 1953; that the mother pay suitable transportation costs for her and her care en route from the home of her father to the home of her mother each year for the normal school months. From this decree the plaintiff-father has appealed.
While this is a statutory action at law, it is of an equitable nature and tried according to equitable principles. Hensley v. Hensley, Mo.App., 233 S.W.2d 42.
This court hears it de novo and has the responsibility of rendering such decree as it thinks should have been rendered, under the evidence, by the trial court, giving due deference to the advantage that the court had by hearing and seeing the witnesses as they testify. Hayes v. Hayes, Mo.Sup., 252 S.W.2d 323; Hawkins v. Thompson, Mo.App., 210 S.W.2d 747.
The guiding star is always the welfare of the child. Hawkins v. Thompson, Mo.App., 210 S.W.2d 747; Lane v. Lane, *108 Mo.App., 186 S.W.2d 47; Harviel v. Harviel, Mo.App., 247 S.W.2d 346.
There must not only be proof of a change in conditions since the last decree but it must be such a change that would beneficially affect the interest of the child. Hawkins v. Thompson, Mo.App., 210 S.W. 2d 747; Hensley v. Hensley, Mo.App., 233 S.W.2d 42; Brake v. Brake, Mo.App., 244 S.W.2d 786.
While this court or the trial court has the right to transfer the care and custody of the child to one out of the jurisdiction of the court, this should be done only when it is clearly apparent that it is for the best interest of the child. Lane v. Lane, Mo.App., 186 S.W.2d 47; Fago v. Fago, Mo.App., 250 S.W.2d 837.
We do not think that there is evidence of changed conditions sufficient to justify the trial court or this court in granting the custody of the child to its mother who lives in California, has no present intention of returning here, and is raising another family there. About the only changed conditions that were proven at all since the original decree was that she immediately married, had a baby, would soon have another one; that she and her husband had bought a house, practically all of it on credit, and that she was living in California. See Davis v. Davis, Mo.App., 254 S.W.2d 270. The record shows that her husband was the injured and innocent party in the divorce suit. It shows that she re-married within two months of the granting of the divorce to a man she had known approximately for one month. It shows that she had never had actual personal care and custody of the child after the original decree except on two visits back here where she was with it at the home of its great-grandmother.
On the other hand, the evidence does show that the child's father had re-married some seven months before the hearing and some eighteen months after the divorce. His new wife, so the evidence shows, was of high character, a fine housekeeper, loved the child and showered upon it motherly affection. The father and stepmother were living in a comfortable home in a nice residential district, well furnished and with modern conveniences. The father was regularly employed at a salary sufficient to support the wife and his child. While he lives at Steele, Missouri, and works at Blytheville, Arkansas, they are only a short distance apart. They lived near a school, were giving the child religious instruction and taking the very best of care of it, in fact, the evidence shows better care than it had when living with its natural mother. To send the child to California and beyond the jurisdiction and supervision of the court, in the home of, and to be supported by a stepfather, under the evidence in this case, would be to take a risk with its future and we would be gambling as to its welfare. Stricklin v. Richters, Mo.App., 256 S.W.2d 53.
Neither is there any evidence that would justify giving any portion of its care and custody to its maternal great-grandmother. It is our decision that the care and custody should be awarded to its father and if sometime in the future the mother returns to the jurisdiction of the court, she should have all reasonable and proper rights of visitation, and if she returns permanently the trial court has jurisdiction to make such modification in the future as the then circumstances might justify. The delinquent payments should, of course be made. Otherwise they could be collected on execution as any other money judgment.
The cause is reversed and remanded with directions to the trial court to enter a decree in accordance with this opinion and to retain jurisdiction for such further orders in the future as may be necessary upon a change in conditions. It is so ordered.
BLAIR and McDOWELL, JJ., concur.