Faye HACHTEL, Appellant,

v.

Charles HACHTEL, Respondent.

No. 7475.

Springfield Court of Appeals.

Missouri.

April 28, 1956.

Esco V. Kell, West Plains, for appellant.

Green & Green, West Plains, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment of the Circuit Court of Texas County, Missouri, modifying the provisions of a divorce decree with reference to the custody of Michael Charles Hachtel, a minor of the age of nine years.

The original divorce decree, dated May 20, 1954, provided:

"The Court further finds that plaintiff and defendant have one adopted minor child, namely: Michael Charles Hachtel, and the Court finds that it is for the best interest of such child that the care and custody of such child be given to the plaintiff with the right of defendant to visit such child on all reasonable occasions and that in addition to defendant's visitation privileges such defendant shall be allowed to have custody of such child each year on and after July 15 to and including the following August 14th, * * *".

It was such indefinite provisions respecting the rights of visitation that eventually gave rise to the present controversy.

December 22, 1954, defendant filed a motion to modify the divorce decree asking that the custody of such minor be changed from plaintiff to the child's natural mother, Mrs. Ben Diamond, of Wichita, Kansas. The motion is based upon acts of misconduct on part of plaintiff committed since the divorce decree as to defendant's rights of visitation granted in such decree by the

court. The acts of misconduct alleged were as follows: 1. That plaintiff failed to move to Wichita, Kansas, to live with her daughter as she testified she would in the divorce action; 2. that she fussed and quarreled at defendant when he attempted to visit the child; 3. that she refused defendant custody of the child from July 15 until August 14, 1954; 4. that plaintiff has on occasions refused to permit the child to talk with defendant and refused defendant the right to talk to the child; 5. that on occasions she secreted such child when defendant was attempting to visit him; 6. that plaintiff has attempted to prejudice the mind of the child against defendant; 7. that plaintiff on one occasion when defendant was attempting to visit the child tried to prevent such visit and thereafter had defendant arrested and charged with an assault upon her; 8. defendant states that he paid to plaintiff $40 per month for the maintenance of the child but that she fraudulently applied for and obtained child relief from the state of Missouri on the theory she had no support for such child; 9. the motion stated that the natural mother resides in Wichita, is married and amply able and willing to look after and care for the child and give him proper religious and educational training; 10. that if custody is granted to the natural mother defendant will continue to pay her for his support.

Plaintiff filed answer in which she admitted the provisions of the original divorce decree but denied all other allegations. The answer alleged that defendant abused his rights of visitation as given by the court. in that on his attempted visits he cursed and abused plaintiff; that he called at unreasonable times; that he always insisted on taking the boy away from home on weekends and refused to visit the boy at home; that on one attempted visit defendant struck and beat plaintiff and she had him arrested for assault. The answer pleaded that the minor child in question was born out of wedlock and was by the mother turned over to his grandparents at birth and was by them adopted when he was about a year old; that the natural mother has never cared for nor supported the child or had custody of him for one day; that the natural parent is a practical stranger to him and it would not be for the best interest and welfare to send the child out of the state.

On May 9, 1955, the court rendered the following judgment:

"Now on this day the Motion to Modify Decree, heretofore filed, by the Defendant with respect to the custody of Michael Charles Hachtel, the minor adopted child of the parties herein, is, by the Court, sustained and the custody of said child is changed from the Plaintiff to Dorothy Diamond, the natural mother of said child and to Benjamin Harrison Diamond, husband of Dorothy Diamond. * *, * "

The evidence shows that the action for divorce was brought by plaintiff in Texas County; that defendant filed answer and crossbill. The court awarded defendant a divorce on the crossbill and dismissed plaintiff's petition. We have set out the judgment of the court concerning the custody of the child. Immediately after the divorce, granted May 20, 1954, plaintiff moved to Pomona, a village of about 400 people, in Howell County, where she continuously lived until the filing of the motion to modify in the instant case.

The evidence shows that Dorothy Hachtel, now Mrs. Ben Diamond, was the daughter of plaintiff and defendant; that when 16 years of age and while living at home with her parents she gave birth to the minor in question, out of wedlock; that the grandparents took the baby from the hospital and have had the care and custody of it continuously until the order of the court herein. There is no dispute that Mrs. Diamond has never had the child in her custody nor has she cared for or supported it.

We think, likewise, the testimony clearly shows that the plaintiff has afforded a good and sufficient home and the child has had proper care and training, both educationally and religiously, while in her custody.

The defendant attempted to belittle plaintiff's home, but the testimony is very convincing that plaintiff's home is better than she had before the divorce.

The evidence is undisputed that defendant claims West Plains as his home, but he is a carpenter engaged in his profession in Kansas City and has no home for the child. He admits he does not want custody of the child but contends that his best interest and welfare would be with his natural mother.

The evidence is that when the minor child was about one year old the mother left the home and her whereabouts after that were not shown. It discloses that when about 19 or 20 years of age she gave birth to another child out of wedlock, which child is now six years old and has been adopted by a family in Oklahoma. Mrs. Diamond is now 26 years of age; she is married to Ben Diamond, who is gainfully employed in Wichita, Kansas. She has been married about five years and has two boys, one about two and the other about four years of age. We think the evidence shows that Mrs. Diamond now has a modern home to live in and is financially able to care for the child.

The evidence shows that the natural mother never attempted to get custody of this child until defendant, after the divorce action, took the child to their home. Mr. Diamond testified that when plaintiff sued defendant for divorce he and his wife loaned plaintiff the money to bring the action and that at that time it was the intention that plaintiff have custody of the child. He gave this testimony:

"Q. Now, have you had Michael Hachtel visit in your home as much as a week without Mrs. Hachtel since you were married to her daughter? A. I don't believe he has. I don't—".

Mr. Diamond testified that at the time of the divorce he and Mrs. Diamond were favorable to plaintiff to have custody of the child. He testified that up until that time the child had been well cared for and so far as he personally knew was still well cared for. He gave this testimony:

"Q. And you didn't have any intention of wanting the custody at that time? A. I imagined that she would take what I think is a little better care of him than from what I heard. All I know is what I heard.

"Q. Your wife at that time didn't have any intention of taking the custody or asking for custody, did she? A. I don't think so."

He testified that his wife was trying to aid plaintiff to get the custody of the child from defendant because defendant had placed it with his other daughter. He gave his evidence:

"Q. You wanted to get it back in Mrs. Hachtel's hands then, didn't you? A. We did. We tried; yes, sir."

Defendant's first complaint is that plaintiff testified in the divorce action that she intended to move to Wichita and live with her daughter but instead moved to Howell County. Of course there is no merit to this contention. The court's decree determines the duties of the parties as to the custody of the child and the decree makes no mention as to where plaintiff should live.

Defendant relies solely on the misconduct of plaintiff in relation to his rights of visitation granted by the court. He first testifies that he was not permitted to have custody of the child from July 15 to August 14, 1954, as provided by the decree. The evidence on this contention is that the divorce decree was granted May 20th, a motion for new trial was filed and not passed upon until August 24th, at which time all of the parties were present, including the boy, and it was agreed by all of them, together with the court, that the defendant take custody of the child at that time and keep him until the end of August, when he was to be returned to plaintiff to enter school. So there is no merit in this contention.

Defendant next complains that on each attempted visit to see the child plaintiff quarreled and fussed at him and cursed

him. We think the evidence clearly establishes the fact that defendant and plaintiff never got along, even before the divorce; that there was an absolute misunderstanding as to their rights under the decree of the court.

As we have already indicated, the court's arrangement for the defendant's visitation with the child was so indefinite that it caused the present trouble. The defendant's testimony shows that he worked in Kansas City. He stated he worked about 40 hours a week at $2.85 an hour; that on weekends he would drive to his home in West Plains, and the testimony shows that he insisted on having custody of the child on almost every weekend from September 1, 1954, until December 28, 1954, the time of the filing of this motion. While defendant denied that he called for the child at 7:00 o'clock A.M., on one occasion, and before the plaintiff and the boy had gotten up, yet we think the testimony shows he did so call and that he raised such a fuss about seeing the boy that it was heard by a neighbor living next door. Defendant testified that he only got the child on one occasion without a writ from the court or without the assistance of officers of the court. However, he admits that on one occasion he had the boy over the weekend and took him to the county fair at West Plains and, we think, the evidence shows that this was the first part of September, so defendant, at least, obtained the boy on two occasions without the assistance of officers.

Defendant states that on September 25th he attempted to visit the boy at plaintiff's home; that plaintiff permitted the boy to come out on the porch and talk to him and he asked the child if he wanted to go with him and helped him across the road and into his car. He gave this testimony:

"Q. What did she do when she got to the car? A. She run her arm under the wheel, knocked the keys out and blowed the horn. I knocked her—

"Q. Tell about that occasion what she did? A. She got mad and called me several names, and told me 'I wasn't going to get him then or ever.'

"Q. Now, did you drive off with the boy on that occasion? A. I did."

The evidence shows that it was on this occasion that plaintiff had defendant arrested for assault.

We find there was no evidence to show that plaintiff ever secreted the boy so as to prevent defendant from seeing him. Defendant testified that on one occasion he went to the school to see the child but that plaintiff kept the boy out of school; that he looked all over town for the child and couldn't find him. This does not show that the boy was being secreted to prevent defendant from seeing him. The evidence does show that the assault action was to be heard at the courthouse in Howell County on October 7th and that defendant was probably trying to see the boy to get his testimony. Defendant testified that at the hearing in the courthouse on the assault charge he attempted to visit the boy and plaintiff came out and grabbed the child by the arm and took him away. There was some difference as to what she said on that occasion. Some said she said defendant wasn't to see the boy only on weekends; one witness testified she said, "You are trying to bribe him."

Defendant's testimony shows that after September 25th, the date of the trouble which caused the arrest, defendant secured two writs from the court to take the child from plaintiff's home and on one occasion a former deputy sheriff went with him to get the child. The evidence shows the defendant always took the child away from home; that at Christmastime he attempted to take the child to Kansas City and, because of weather conditions, left him in Springfield with Ben Diamond's mother. He testified that when he returned the child after Christmas with gifts he had purchased, plaintiff jerked the presents out of the boy's hands and threw them out in the yard. Defendant testified that on September 15th he attempted to visit the boy and found him and plaintiff visiting in a Mr. Ramsey's home; that plaintiff hooked the

screen so defendant could not get the boy. This testimony was denied by plaintiff. She testified she offered to let the boy visit with him in Pomona but refused to let him take him out of town.

Plaintiff's testimony is to the effect that she never cursed or abused defendant on his attempted visits to see the child; that she offered to let plaintiff visit with the child at their home or in Pomona but that he always insisted on taking him away; that on one occasion defendant called for the child before they had gotten up, kicked on the door and raised such a fuss as to disturb the neighbors; that he cursed and abused plaintiff on the attempted visits and struck her for which she had him arrested.

In our opinion we will refer to appellant as plaintiff and to the respondent as defendant, the position they occupied in the lower court.

We will consider plaintiff's allegations of errors numbered I, II, and III together. These allegations allege that there was no evidence of changed circumstances since the original decree to warrant the judgment of the trial court in changing the custody of the child; that where the visitation rights are indefinite the trial court should specifically fix such visitation period so that its order might be enforced by citation for contempt.

There is no controversy between counsel over the law in the case. Both sides recognized that the terms of a divorce decree respecting the custody of a minor child can only be modified or altered upon a showing of changed conditions since the entry of the decree; that in resolving the conflicting claims of the parents the welfare of the child itself is always the court's first consideration, to which the parents' own wishes and personal desires must yield if opposed to such welfare; and that the awarding of a child's custody, whether upon entry of the original decree or upon a subsequent motion to modify, should not be made with the view of either punishing one parent or rewarding the other, but only from the standpoint of the best interest of the child. Perr v. Perr, Mo.App., 205 S.W.2d 909, 911;

Ackermann v. Ackermann, Mo.App., 280 S.W.2d 425; Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 73; Pope v. Pope, Mo.App., 267 S.W.2d 340, 343; Mayo v. Mayo, Mo. App., 244 S.W.2d 415, 416; Garvey v. Garvey, Mo.App., 233 S.W.2d 48, 50.

In the instant case the court of appeals has the duty to review the whole record with primary regard for the best interest and welfare of the child to determine whether the moving party has shown by a preponderance of the evidence that there has been a change of facts and circumstances occurring since the original decree, which in the best interest of the child requires such modification.

This court stated in Hurley v. Hurley, supra [284 S.W.2d 73]: " * * * Our duty on appeal is to review the entire record with primary regard for the regnant principle that the welfare of the children is of paramount and controlling importance. * * *"

In a case of this kind the appellate court is not bound by the finding of the trial court but may arrive at its own conclusion from a view of the whole record and may make such findings as it deems appropriate. Hawkins v. Thompson, Mo.App., 210 S.W. 2d 747, 751; Rone v. Rone, Mo.App., 20 S. W.2d 545; Parks v. Cook, Mo.App., 180 S.W.2d 64; Fago v. Fago, Mo.App., 250 S.W.2d 837, 841; Hurley v. Hurley, supra; Brake v. Brake, Mo.App., 244 S.W.2d 786, 789; Frame v. Black, Mo.App., 259 S.W.2d 104, 107.

In the instant case defendant's only claim of changed conditions is that plaintiff, while she had the child in her custody, had so conducted herself as to deny defendant the right to visit such child as given to him by the decree of the court, thereby depriving the child of the benefits to be derived from association with his father.

The evidence indicates that there is lacking a proper regard by both plaintiff and defendant as to their rights of association with this minor child. Each party is guilty in some degree of endeavoring to harass

the other through the medium of the child. It may be granted, however, that both of them are devoted to the child and that the child should therefore be afforded the opportunity of having all reasonable contacts with his parents. Regardless of the reason which defendant had for feeling that he had not been shown the consideration for which he was entitled, he was apparently too insistent upon the strict letter of his rights. While there was much incompetent testimony admitted in this case, the evidence does show that defendant has been too contentious in asserting his rights to have this child. It shows that before the divorce defendant took the child from plaintiff and placed it with another daughter in Willow Springs; that Mr. and Mrs. Diamond assisted plaintiff in recovering the child and at the time of the divorce were anxious for her to have him. The evidence shows that defendant did cause trouble when he attempted to get the child from plaintiff's home. It also shows that he struck plaintiff. We are not in sympathy with the defendant's conduct in asserting his rights to take this child from plaintiff on almost every weekend. We wonder how the trial court could find that such visitations would be wholesome for the welfare of this child. How could plaintiff take this child to church and Sunday school if, upon every weekend, either voluntarily or by coercion through a writ of the court, this poker playing father could drag him away from home and keep him until Sunday night. How could a court find that this kind of visits would not be injurious to the child?

With due regard for the comparative situations of the parties, we find that it would be little short of a tragedy to take this nine-year-old boy away from the custody of his adopted mother, the only mother he has ever known, the mother who the evidence shows has given him the best of care, has kept him in school, church and Sunday school regularly, and send him out of the state beyond the jurisdiction of the court to a natural mother who has never cared for or supported him, who has never evidenced any desire to have the custody of the child until after this adopted father, some two weeks before this trial, took the child out to Kansas to her home. The court cannot but consider the facts that while the plaintiff was working and caring for this child, its mother was a fly-by-night. She not only gave birth to this illegitimate baby but some three or four years later gave birth to another baby which has been adopted. The evidence shows that she and her husband have had some trouble relative to this child, and we cannot agree with the trial court that the welfare of the child in question would be best served by changing the custody to its natural parent.

■ The record is calculated to leave the impression that the lower court believed plaintiff to have been primarily responsible for the difficulty encountered in securing obedience to the court's decree and undertook to punish her for it by awarding general custody of the child to Mr. and Mrs. Diamond. It is hardly possible to explain the court's action upon any other basis. We have pointed out that the law forbids the awarding of the custody of a child with a view to punishing one parent or rewarding the other. On the contrary, the court should insert specific and positive directions in its decree so that if either party refused to obey them, such party may then be cited for contempt. This is the way to compel obedience to the court's decree, and not by transferring custody from one parent to another in disregard of the best interest of the child itself. Perr v. Perr, supra. We note the trial court, in commenting upon plaintiff's care of this child, stated that the evidence showed that plaintiff had kept him in school regularly and that the evidence of his teacher and of the child's report card offered showed that he had been doing exceptionally well.

■ Under the evidence in this case we cannot concur in the finding of the trial court that it is for the best interest of this minor child that the custody be changed to a nonresident of the state. The policy of the law is against the removal of a minor child to another jurisdiction unless the evidence clearly shows that it is for the best interest of the child. Fago v. Fago, supra, and cases cited therein.

■ We agree with plaintiff's contention that where, as in the case at bar, the only evidence offered as to changed conditions is that plaintiff, while she had the child in her custody, had so conducted herself as to deprive defendant of the benefit of association with his child, under the order of the trial court where such provisions in the trial court's order respecting the right of visitation were so general as not to definitely fix the rights of the parties that such changed circumstances would not justify a change of the custody of said child. We further find that the order, in the instant case, changing the custody to a nonresident was awarded with the view of punishment to plaintiff because the court believed she was responsible for the failure to carry out his order.

There is but one other point we need consider in plaintiff's brief. Under allegation of error numbered VI, plaintiff contends that the trial court erred in refusing to make a sufficient allowance for attorney fee and expenses on appeal when the evidence showed plaintiff was without means to defray such expenses.

■ We fully agree with the plaintiff that the trial court failed to follow the law in allowing reasonable attorney fees and expenses of appeal to plaintiff under the evidence in this case. We think the court's allowance of $150, which, he stated, was to include all expenses, including attorney fees, and if it took all of the $150 for expenses, no attorney fees would be allowed, is insufficient. Again, this court believes that such a finding by the trial court was the result of the court's belief that the troubles in the case were solely caused by plaintiff. However, we are unable to give relief under this citation of error for the reason that there was no appeal from the order allowing suit money. The record shows that after plaintiff's motion for new trial was overruled and after an affidavit for appeal was filed and allowed, plaintiff refiled a motion for allowance of expenses on appeal and for attorney fees, which motion was afterwards by the court overruled and no appeal taken therefrom.

This court held in Callahan v. Callahan, Mo.App., 192 S.W.2d 48, 50, as follows:

"Complaint is made as to the allowance of alimony. Where, as here, a divorce has been granted the husband and the wife's motion for alimony, attorneys' fees, etc., pending the appeal, was granted as to attorneys' fees only and there was no appeal from that order, the adjudication upon the application became final. Consequently, the question of alimony is not before us." (See cases cited.)

We find against plaintiff upon this issue.

It is the judgment and order of this court that the judgment of the trial court sustaining defendant's motion to modify and changing the custody of Michael Charles Hachtel from plaintiff to Dorothy Diamond and her husband, Benjamin Harrison Diamond, be and the same is hereby set aside. And the court directs that judgment be entered sustaining defendant's motion to modify the original decree of divorce as to custody and that custody of such child be given to the plaintiff with the right of defendant to visit such child on the second and fourth Saturdays in each month following the date of this judgment; that defendant, or his representatives, must call at plaintiff's home for such child between the hours of 8:00 o'clock and 9:00 o'clock A.M., and plaintiff is directed to have such child ready to accompany defendant on each of said Saturdays, and the defendant must return such child to plaintiff on or before 6:00 o'clock P.M. on each of said Saturdays, and, in addition to the rights of visitation on the second and fourth Saturdays in each month, defendant is given the additional right to have custody of the said child from December 26th until New Year's Day; that he shall call for such child between the hours of 8:00 o'clock and 9:00 o'clock A.M. on December 26th and return such child to the plaintiff on or before 6:00 o'clock on New Year's Day. Defendant shall further have the right of custody of such child from July 15th to and including the following August 14th in each year. He or his representatives must call for such child at plain

tiff's home between the hours of 8:00 o'-
clock and 9:00 o'clock A.M. on July 15th in
each year and must return said child to
plaintiff on the following August 14th on
or before 6:00 o'clock P.M. Defendant is
required to pay to plaintiff $40.00 per month
as reasonable support for said minor child
as in the original order granted.

STONE, J., dissents.

RUARK, J., concurs.