Dessie G. Hayes RICHARDS, Plaintiff-
Appellant,

v.

Norman D. HAYES, Defendant-Respondent.

No. 7741.

Springfield Court of Appeals.
Missouri.

Jan. 21, 1959.

**66**

Weldon W. Moore, Rolla, for appellant.

Thomas A. Shockley, Waynesville, for respondent.

McDOWELL, Judge.

This is an appeal from a judgment of the Circuit Court of Pulaski County sustaining defendant's motion to modify a divorce decree awarding minor child to the paternal grandparents and dismissing plaintiff's motion to modify.

November 8, 1957, plaintiff was granted a decree of divorce from defendant in the Circuit Court of Pulaski County on the ground of indignities. In the decree the court vested custody of the minor child in question with the maternal grandmother, Velma McKinnon, with reasonable visitation privileges granted both parents. Defendant was ordered to pay $30 per month, child support, beginning December 1, 1957.

December 31, 1957, defendant filed a motion to modify the original divorce decree as to custody of said minor boy, now seven years of age. The motion alleged, inter alia, that since the decree of divorce was rendered the maternal grandmother has turned over the custody of the child to his mother, without permission of the court; that since the divorce the mother has married a soldier by the name of Richards, stationed at Fort Leonard Wood, and lives at Rolla, Missouri; that the child will be taken out of Missouri when the said Richards is transferred to some other post or overseas; that defendant is permanently located at Dixon; that his parents reside near Dixon, are people of good reputation and are ready and willing to help defendant with the care and custody if the court grants custody to him.

A counter-motion for modification was filed by plaintiff January 13, 1958. It alleged, inter alia, that since the court awarded custody of the minor child to the maternal grandmother, to-wit, November 8, 1957, plaintiff has married Elmer S. Richards and now lives at Rolla, Missouri; that she and her husband have a suitable home and are both willing and able to give the minor child their love and attention; that her mother, Velma McKinnon, is now in such financial condition that she must work full time to support herself and is unable to give proper care to said child; that defendant is single and unmarried and does not have a suitable home for the child. It is alleged that plaintiff and her husband attend the Baptist Church at Rolla, and, if granted the custody of said minor boy, will cause him to attend church and Sunday School regularly; that

plaintiff's husband, Richards, at present is serving with the Armed Forces of the United States with the rank of Corporal and has sufficient income to provide said child with the necessities of life. Plaintiff states that the welfare of the child will be best served by a modification of the decree of divorce awarding custody to her.

Plaintiff obtained a decree of divorce from defendant November 8, 1957, on ground of indignities and in the decree the court found plaintiff to be the innocent and injured party. The custody of the minor child was awarded to the maternal grandmother, Velma McKinnon, who lived at Dixon. The parents were granted visitation privileges. There is some conflict in the testimony as to the date of separation. Velma McKinnon testified that the minor boy had been in her custody for two-thirds of his lifetime and that plaintiff and the defendant had been separated since the child was two years old. She testified they had not lived together as man and wife for that length of time. This testimony was corroborated by plaintiff. Defendant stated they had been separated for about two years. He admitted that plaintiff had been employed and had been away from the home but said she came back every week or two until the last two years.

While the child was in custody of the maternal grandmother, under the order of the court, each of the parties were permitted to visit him. Norman Hayes, defendant, would take the child on Saturdays to visit his paternal grandparents, Homer Hayes and wife, who live on a farm about ten miles from Dixon. The evidence shows that there was and now is the very best of feeling between the maternal grandmother and Norman Hayes and with Norman's parents. Mrs. McKinnon testified that Norman Hayes seemed like one of her own children and had visited in her home since this trouble arose and she also testified to the good reputation of Norman's parents.

The evidence shows that while the maternal grandmother had custody under the order of the court the child was with its mother, plaintiff, on Christmas Eve; that on Christmas Day defendant took the child to the home of his parents, where he spent the day; that after the holidays plaintiff brought the child back to her home and put him to bed; that when she attempted to leave, the child cried to go with her and did not want to stay with his grandmother. The grandmother testified that she told Mr. Shockley she could not keep the child longer because he wanted to be with his mother and she turned the child over to plaintiff about a week after the holidays; that the child was still in her home when she received notice December 31, 1957, of defendant's motion to modify.

We think the evidence conclusively establishes the good reputation of both plaintiff and defendant and the defendant's parents, Homer Hayes and wife.

Defendant testified that the child had been well treated so far as he could tell while he was in the custody of plaintiff. There is no dispute that plaintiff and her husband, Richards, kept the boy in school and took him to church and Sunday School and, in all respects, treated him with love and affection, as parents should.

The evidence is that while living in the dormitory and working at Fort Leonard Wood, plaintiff met Elmer S. Richards, a Platoon Sergeant in the U. S. Army, in training at the Fort; that in December, 1957, they were married and now live in Rolla, Missouri. It shows that Richards came to Fort Leonard Wood in July, 1955, long after the date of separation of plaintiff and defendant and that he did keep company with her prior to the date of divorce. The record does not contain the pleadings and we are not informed as to what the issues really were in the divorce trial. It only contains the decree of divorce.

The evidence shows that the date of Richard's discharge from the army was

April 24, 1958; that he had the time extended for six months in order to decide whether or not he would stay in the army and go to Officers School or retire to private life and go into the lumber business. He gave this testimony:

"Q. And if you do stay in the army, is that your intention, to go to Officer's Training School some place and become an officer? A. It is, sir, If I stay in the army, I certainly will go to Officers School."

Richards testified he had worked in the lumber business and it would take him a little time to get back as an assistant lumber foreman since he had been away from the business about three years; that his decision for the future depended upon what was best for his family. He said that if he proceeded to Officer's Training School his income would be assured. When asked if he would leave Fort Leonard Wood before October 24th, he stated: "No, sir; there's no chance whatsoever. I—there's no schools that you can go to in that length of time. Well, let's say that they would approve—they would approve no schools for that length of time. In order to go overseas, you must have quite a few more months than that, and it's more or less just to fill my vacancy as Platoon Sergeant, unless I decide whether I should go to Officer's School or not."

Plaintiff's testimony is to the effect that her husband might remain in the army and take officer's training and that he might be stationed in some other State or even sent overseas. She testified she wanted to take the child and go with her husband wherever he might be. Both plaintiff and her husband testified they desired to have the child and would care for and educate him. Richards testified he would like to adopt the child. The evidence is they are expecting a baby of their own but Richards testified that would make no difference as he would treat the boy as his own child if awarded custody.

The undisputed evidence is that Norman Hayes, defendant, lives alone in a trailer house consisting of a trailer and two rooms built thereon, in Dixon. He works at the shoe factory and earns approximately $200 a month on the average. His parents, Homer Hayes and wife, live in a modern six room house on an 800 acre farm, about ten miles from Dixon, on a public highway; that they own a half interest in another tract of land of 700 acres and a half interest in a garage in Dixon; that they owe about $8,000 on their property. These people are of good reputation, morally fit to properly care for the minor boy in question, if given custody, and agree to take the child and see that he is properly cared for, educated and kept in church and Sunday School.

Defendant testified that he did not want custody granted him but wanted the court to modify the decree of divorce by placing custody of the child with his parents. The evidence shows that good school facilities exists and that the grandparents go to church and that they will see to the education and moral training of the boy.

An examination of the record convinces this court that the trial court bases its judgment on the grounds that the evidence shows plaintiff and her husband might take the child from the jurisdiction of the court and out of the State, even to a foreign country and that for this reason the best interest of the child would be with his paternal grandparents.

By the decree entered on April 25, 1958, the court sustained defendant's motion to modify with respect to the minor child in issue and changed the custody from Mrs. Velma McKinnon, maternal grandmother, to Mr. and Mrs. Homer Hayes, paternal grandparents. The change of custody was to begin on the first day of June, 1958, so the child may finish school in Rolla, Missouri, and it was ordered that the child be not removed from the jurisdiction of the court.

We agree with point I in appellant's brief that, on appeal from an order sus-

taining a motion to modify a divorce decree pertaining to the custody of a minor child, it is the duty of the appellate court to review the entire record with primary regard for the best interest and welfare of the child involved. Dansker v. Dansker, Mo.App., 279 S.W.2d 205, 209 [5]; Wilson v. Wilson, Mo.App., 260 S.W.2d 770; Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 73. In the last cited case this court stated:

" * * * Our duty on appeal is to review the entire record with primary regard for the regnant principle that the welfare of the children is of paramount and controlling importance." Pope v. Pope, Mo.App., 267 S.W.2d 340, 343 [3]; Mayo v. Mayo, Mo.App., 244 S.W.2d 415, 416 [1]; Garvey v. Garvey, Mo.App., 233 S.W.2d 48, 50 [2]; Clark v. Clark, Mo.App., 306 S.W.2d 641; I—— v. B——, Mo.App., 305 S.W.2d 713 [7, 8].

It is next contended by appellant that the trial court erred in granting custody of the minor child because the evidence did not show that plaintiff was an unfit person to have custody nor did the evidence show that the welfare of the child manifestly called for custody to be granted to the paternal grandparents.

In the instant case the motions to modify the original divorce decree were filed by the parties to the divorce suit. Under the law only parties to the original action are permitted to file motions to modify. Wilson v. Wilson, supra, 260 S.W.2d at page 772 [1]; Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841. In fact, the contest in this lawsuit is one between the plaintiff, mother of the child, and the child's paternal grandparents. Defendant testified that he wanted the court to vest custody in his parents.

We held in Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 73 [1, 2], that: "Properly recognizing that the original decree of October 23, 1948, from which no appeal was taken, was final and conclusive as to all matters then adjudicated, including care and custody of the children, and could not

be disturbed except in a proceeding initiated for that very purpose [Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323, 328 (10); Mahan v. Mahan, 239 Mo.App. 317, 192 S.W.2d 626, 627(1); Sanders v. Sanders, 223 Mo.App. 834, 14 S.W.2d 458, 459 (1)] and upon proof of new facts or changed conditions subsequent to the original decree [Cherry v. Cherry, Mo.App., 272 S.W.2d 700, 704(5); Lehr v. Lehr, Mo.App., 264 S.W.2d 35, 36(1); Montgomery v. Montgomery, Mo.App., 257 S.W.2d 189, 196(2)] * * *."

Changed conditions were clearly shown by the evidence on the part of both the plaintiff and the defendant. Since the original divorce decree plaintiff had remarried and established a home suitable for the care and custody of her child. The maternal grandmother had refused to keep custody of the boy as directed by the court in the divorce judgment. There is no contention here on the point of changed conditions. However, such change of conditions is not enough to warrant a change in custody. The evidence must also be shown that the welfare of the child demands a change of custody. The test to be applied is stated in Schumm v. Schumm, Mo.App., 223 S.W.2d 122, 126, as follows:

" * * * A provision once made becomes as conclusive as any other order or decree, and can only be modified on a showing of subsequently changed conditions. However there is this to be borne in mind—that while proof of a change in conditions is a prerequisite to the modification of a decree, such proof does not necessarily require a modification, and no modification will be made unless the welfare of the child itself requires a change in the provisions for its custody." Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364, 367 [2].

It was held in the above cited case on page 367 that the finding of the trial court should be deferred to "unless it is apparently in conflict with a clear preponderance of the evidence and discloses a manifest

abuse of judicial discretion". Martin v. Martin, Mo.App., 160 S.W.2d 457; Baer v. Baer, Mo.App., 51 S.W.2d 873; Lampe v. Lampe, Mo.App., 28 S.W.2d 414.

So, in determining the issue in this case, we must determine what is the best interest for the minor involved and it is our duty to defer to the finding of the trial court unless upon a consideration of the whole record the judgment of the trial court is apparently in conflict with the clear preponderance of the evidence and discloses a manifest abuse of judicial discretion.

In Wilson v. Wilson, supra, 260 S.W.2d on page 776 [3], the St. Louis Court of Appeals stated: "A parent's claim to custody, absent unfitness, must prevail over the claims of grandparents. Because the Kansas City Court of Appeals failed to give effect to the presumption 'that the best interest of the child was to be in the custody of the parent,' its opinion was quashed by the Supreme Court in State ex rel. Crockett v. Ellison, 271 Mo. 416, 196 S.W. 1140. See also In re Scarritt, 76 Mo. 565 and Weir v. Marley, 99 Mo. 484, 12 S.W. 798, 6 L.R.A. 672.

" 'In the absence of evidence to the contrary, the law presumes that the child's welfare will best be served by committing it to the custody of one or the other of its parents. The parents' right by nature and by law, to the custody of children, should never be denied, except for the most cogent reasons, and unless it is clearly shown that both the parents are unqualified.' 27 C.J.S. Divorce § 308 c, p. 1169.

"In Williams v. Williams, 240 Mo.App. 336, 342, 205 S.W.2d 949, 953, Judge Dew said: ' * * * as against the world a parent has the primary right to the custody of his child, and * * * he is presumed to be fit and qualified for that natural privilege.' See Cox v. Carapella, Mo.App., 246 S.W.2d 513."

In Clark v. Clark, Mo.App., 306 S.W.2d 641, 647 [6, 7], it was stated: " * * *

However, in determining such matters the rule is that the court shall decide only as the best interest and welfare of the child itself may seem to require. Section 452.150 RSMo 1949, V.A.M.S. Where the mother is the prevailing party in the divorce proceeding it is rare indeed that a court finds that the best interest and welfare of the child are served by giving over its custody to the father. Wells v. Wells, Mo.App., 117 S.W.2d 700; Wilson v. Wilson, Mo.App., 260 S.W.2d 770; Long v. Long, Mo.App., 280 S.W.2d 690. Also, it is well settled that the findings of the trial court in matters involving the custody of a minor child, while not binding on the appellate court which must review the record for itself, are nevertheless not to be lightly disturbed, and will be deferred to unless the appellate court is firmly convinced that the welfare of the child requires some other disposition. Thomas v. Thomas, supra [Mo.App., 288 S.W.2d 689]; Lutker v. Lutker, Mo.App., 230 S.W.2d 177, 179."

In the instant case the burden was upon the defendant to establish by preponderance of credible evidence the existence of new or changed facts and circumstances requiring a shift in custody. M—— v. M——, Mo.App., 313 S.W.2d 209.

Judge Ruark, in speaking for this court, in I—— v. B——, Mo.App., 305 S.W. 2d 713, 719, stated: " * * * We think the total language of the cases can be summarized by the statement that the natural parent's right to custody should not be denied unless it be shown that such parent is unfit, incompetent, or unable to care for the child, or unless the welfare of the child manifestly calls for a different disposition under the circumstances shown."

Generally, it is against the policy of the law to permit the removal of a minor child, whose custody has been awarded in a divorce decree, to another jurisdiction, but obstacle of nonresidence is not regarded as insuperable and notwithstand-

ing fixed policy of courts, removal of a child will nevertheless be permitted in those instances where it is clearly made to appear to courts that the best interest of the child itself will be thereby subserved. Stuessi v. Stuessi, Mo.App., 307 S.W.2d 380, 381 [1]; Ackermann v. Ackermann, Mo.App., 280 S.W.2d 425, 427 [4]; Middleton v. Tozer, Mo.App., 259 S.W.2d 80; Frame v. Black, Mo.App., 259 S.W.2d 104.

■ Respondent asserts in his brief, under points I, II, III, IV, V, VI, VII, VIII, and IX, the rule of law that in passing upon the custody of a minor child the welfare of the child is the leading light by which the court is to be guided in its findings. All of the cases quoted from in Missouri, as well as those cited by respondent under the points referred to, declare this to be the law.

■ We agree with the law stated in respondent's point X. In Swan v. Swan, Mo.App., 262 S.W.2d 312, 315 [4, 5] this law is stated: "We are not unmindful of the rule announced by a line of cases including Dawson v. Dawson, Mo.App., 241 S.W.2d 745; Drew v. Drew, Mo.App., 186 S.W.2d 858, and Ruedlinger v. Ruedlinger, 222 Mo.App. 819, 10 S.W.2d 324, that where in an unappealed decree awarding custody of a child to one or more of its grandparents the presumption that its custody should be in the parent no longer prevails, but that a contrary presumption should be indulged until proof of change of circumstances is made satisfying the court that the best interest of the child demands that its custody be changed. However, this latter presumption does not destroy and remove from our consideration the rule announced in Ex parte De Castro, supra [238 Mo.App. 1011, 190 S.W.2d 949], and the presumption should give way in the light of a showing of the fitness of the parents where, as here, the conditions of the parent seeking custody have materially. changed since the original decree."

We agree with the law as stated under point XI of respondent's brief that the judgment of the trial court should stand unless a clear conflict of the preponderance of the evidence disclosing a manifest abuse of discretion is found. This law was declared in Brake v. Brake, Mo.App., 244 S. W.2d 786 and in the authorities cited in our opinion.

The evidence clearly establishes that both plaintiff and the child's paternal grandparents are of good moral character and qualified to have the care and custody of the minor child. Defendant testified that when he saw the child, while in the custody of the plaintiff, he appeared to be well cared for and in good physical condition. He made no objection whatever to the ability and fitness of plaintiff to have custody of said child. His only complaint was that he loved the child and that it would be taken from the jurisdiction of the court so he could not see him. We gather from the evidence that the custody of this child had been with plaintiff's mother since he was two years old. He had been, during all this time, supported and maintained by plaintiff through her labor at Fort Leonard Wood. There is no evidence that during this four or five years defendant ever contributed to the support of his child. Even though we might find that since the court placed custody with plaintiff's mother there was no presumption that the best interest of the child would be with the mother, yet, when we examine defendant's testimony we find that the court actually placed the child where plaintiff and the defendant directed; that the court in no way found the mother incompetent or unfit to care for the child. The court recognized that the mother was a fit person to have the custody of the child by continuing it in her possession until the end of the school year. The truth is that the mother lived in a dormitory at Fort Leonard Wood, was earning a living for herself and the child and was in no position, at the time of the decree of divorce, to have its custody but now she is in a position to give the child a good home and see to his moral training and education. The facts in this case are

so different from the facts in the cases relied on by respondent as to render such decisions of little value. It must be remembered that every case is decided upon the facts of the particular case.

We notice another matter which was in evidence. The court decreed that defendant pay to the maternal grandmother $30 per month for support. The testimony is that he paid her at Chistmastime but deducted from the $30 the days that the child was not with her and while he was with him and visiting his paternal grandparents. Such closeness of defendant in the support of his child does not look too good. Defendant's evidence wholly fails to show the unfitness, incompetency or inability of plaintiff to care for and have custody of the child.

■ From a consideration of the whole record in this case we find that the judgment of the trial court is apparently in conflict with the clear preponderance of the evidence and discloses a manifest abuse of judicial discretion. We find the trial court erred in sustaining defendant's motion for change of custody and in decreeing custody to the paternal grandparents. We further find that the court was in error in dismissing the motion to modify filed by plaintiff.

It is the order and judgment of this court that the judgment of the trial court be and the same is reversed. That judgment be entered for plaintiff on her counter-motion for custody and that judgment be entered dismissing defendant's motion for change of custody. It is further ordered that defendant and defendant's parents have the right to have the child visit them on the first Saturday and Sunday of each month or, if the parties can agree, the visits may be made more often; that during vacation periods from school said defendant and the paternal grandparents will be permitted to have custody of said child for thirty days in each year, the child to be delivered to them on the first day of July and to remain in their custody until the first day of August; that at the end of such period the child shall be delivered by the defendant and his parents back to plaintiff or to plaintiff's mother, if she directs. It is fur-

ther ordered that should plaintiff remove from the jurisdiction of the court to some other state, said minor child shall be permitted to visit with his father and paternal grandparents for two months in each year, to start on June 1st and end August 1st; that defendant shall pay the expenses of having said child transferred to and from his custody. So ordered.

STONE, P. J., and RUARK, J., concur.