EUGENIA MARTIN, RESPONDENT, v. JOHN F. MARTIN, APPELLANT.—
·125 S. W. (2d) 943.

Kansas City Court of Appeals.   January 30, 1939.

*Pugh & Cook* and *Frank W. Hayes* for appellant.

*Lamm & Barnett* and *Johnson, Garnett & Quinn* for respondent.

CAMPBELL, C.—Plaintiff seeks in this proceeding to obtain modification of a decree of divorce as respects the custody of Margaret Virginia Martin, a child eleven years of age, born of the marriage which the decree dissolved.

The marriage was on November 24, 1925. The divorce suit was brought to the September term, 1929, of the circuit court of Pettis county, Missouri; decree of divorce in favor of plaintiff was rendered September 30, 1929. The decree awarded the custody of Margaret to the defendant for the first six months and to the mother for the next six months, ordered that when Margaret entered school "and during all school months of each year" she should be in the custody of her mother. The decree further directed Margaret be kept in the

home of defendant's mother in Kansas City and not taken out of Missouri without the consent of her mother and the court.

The decree is in harmony with the provisions of a contract made by the father and mother concerning the custody of the child.

The present motion was filed August 21, 1937, the hearing commenced November 5, and the evidence closed November 9. On February 7, 1938, the court modified the decree of September 30, awarded the care and custody of the child, Margaret, to plaintiff, gave defendant right to visit the child "at all reasonable times," denied defendant's motion for modification and allowed plaintiff $500 for compensation for her attorneys. The defendant has appealed.

When the September term, 1929, closed the decree was final and the court could not at a subsequent term change or modify it save upon a showing of "new facts and circumstances arising" thereafter. [Salkey v. Salkey, 80 S. W. (2d) 735.]

The welfare of Margaret is the controlling consideration in determining this appeal. In determining the cause we must consider only the facts and circumstances arising subsequent to the decree for the reason the decree judicially determined what was then for the best interest of the child. The evidence relating to the acts and conduct of plaintiff and defendant prior to the decree must be put aside as of no probative value.

Concerning the matters arising subsequent to the decree plaintiff testified that immediately after the decree Margaret was taken to her paternal Grandmother's home in Kansas City in compliance with the decree; that she (plaintiff) remained in Sedalia until the next January or February, at which time she went to the home of her uncle and aunt in Kansas City and there worked for her uncle until she went to the home of her married sister in Chicago the following October where, within two weeks thereafter, she secured employment at a wage of $19 a week; that she married Edward A. Wade October 4, 1931, and thereafter lived with her husband in neighborhoods where the "upper middle class" lived; that while she was working for her uncle she visited Margaret almost every day and on many occasions took the child to the home of her uncle; that after going to Chicago she frequently called Margaret on long distance telephone and corresponded with defendant's sister and in this way had "definite contact" with Margaret until after Christmas, 1932; that thereafter she obtained numerous addresses where the child was supposed to be but from Christmas, 1932, she was unable to ascertain the whereabouts of Margaret until in December, 1936, at which time Margaret was in California. She testified that her husband in October, 1931, was receiving a wage substantially the same as her wage; that at the time of trial her husband's income was $68 a week, that in consequence thereof she was in position to discontinue her employment and remain at home; that her husband

was a journeyman steam fitter, was paid for overtime "and makes as high as $105 a week." In direct examination she testified she was then living in a brick apartment building "located 4425 Troy;" that the lower apartment contained six rooms, the upper apartment "where we reside," has six rooms and an enclosed sleeping porch; that a school was within four blocks of the residence; and across the street there was a playground for children.

On cross-examination she said that she owned no property, had no income; that she had quit her employment in the hope she would get her child; that her husband, Wade, was 30 years of age, had not contracted a prior marriage; that neither of them owned any property except some furniture which was stored. Plaintiff's testimony concerning her conduct while working for her uncle was corroborated by her uncle.

Plaintiff further testified that during all the times she lived in Chicago until in 1935 she had "gall bladder trouble," which was removed by a surgical operation in 1935. She did not state the length of time she was away from her employment on account of the operation.

Dr. Schroth, for the plaintiff, testified that he was acquainted with plaintiff and her husband; had known the latter all his life; that he saw plaintiff professionally about six months after her marriage in Chicago; that plaintiff at that time "was suffering from a complete nervous breakdown and a stomach condition," for which ailment he treated her, and that he continued such treatment until she had an operation; that the nervous condition of plaintiff was, in his opinion, due almost entirely to the absence of her child, and that if the child were returned to her that condition "would be alleviated." This witness, as well as others, testified to the good reputation of plaintiff and her husband. There was other evidence tending to show that plaintiff and her husband were proper persons to have the care of Margaret.

Plaintiff's husband testified that he passed examination and became a journeyman steam fitter April 1, 1937, and that his average earnings from that day was approximately $70 a week; that his "present address" was 4425 Troy Street, Chicago, Illinois; described the apartment in which he and his wife lived in substantially the same way as it was described by his wife. When asked "is your employment steady," he replied "yes, I am in one of the largest shops in the city now;" that he was willing and able to care for his wife and Margaret and desired his wife to have custody of her child; that he owned property which, including furniture, was of the value of about $400 and was in debt in the amount of $150.

Defendant testified that he was then living and had lived in Alma, Michigan, for approximately five years; was engaged in oil and gas production; that he had two children, Margaret, by his former wife,

the plaintiff, the other, a son, 20 months old, by his present wife, Alfreda; that he built his home in Alma, Michigan, completed it about a year before the trial at a cost of more than $10,000; that the house was well furnished; that his present wife loves Margaret and Margaret loved her stepmother and half-brother; that following the divorce in 1929 he took Margaret to the home of his mother who thereafter had custody of the child except for a short visit in California in 1932 until Margaret came to him in Michigan. Defendant contracted a marriage in 1930 in Kansas. That marriage was dissolved by decree in favor of defendant herein in 1935. No child was born of that marriage.

In January, 1931, defendant filed in the divorce proceeding in Pettis County a verified motion in which he sought modification of the divorce decree respecting the custody of Margaret. He alleged therein that he did not know the whereabouts of the plaintiff. In fact, he had talked with her over the telephone a few days before and knew that she was in Chicago, although it was not shown that he knew her street address. He testified that he had told Margaret who her mother was but that he had not encouraged the child to see her mother, nor had he made attempt "to get in touch with the mother."

Defendant's present wife testified that she was 25 years old, had known Margaret since her marriage; that Margaret was a very intelligent child, "sweet disposition, and a perfectly normal child in every way;" was good in her studies and received grades above the average; that she treated Margaret as she would her own child; that Margaret and her father were companionable, congenial, and that she desired to have the custody of Margaret; that Margaret was very happy in her present home.

Friends and acquaintances of defendant testified that defendant and his wife were of good reputation; had a most excellent home, associated with good people, that Margaret seemed to love her father and his wife, her half-brother, and to be very well pleased with her home and surroundings.

School teachers who had taught Margaret in the public schools testified in effect that she was quite intelligent, made excellent grades, was apparently well cared for at home and seemed to love her home and stepmother; that Margaret's stepmother took an active interest in and appeared to love Margaret.

Margaret testified in deposition to the effect that she loved her father, stepmother and half-brother, was attached to her home, teachers and school, and desired to remain in her present home. Her testimony shows she is quite intelligent and well educated for one of her age.

From the foregoing it is plain that both plaintiff and defendant have due and proper affection for their child; that the child loves

her father and has not had opportunity to know her own mother; that defendant is able to care for and educate the child, and that he intends to do so; that the child now has a home in which she is happy and contented. In such circumstances it will not do to say that either parent shall have sole custody, or what is tantamount to the sole custody of the child.

The provisions in the decree to the effect that the defendant could visit Margaret at reasonable times would, considering the feelings of each parent toward the other, wholly exclude the defendant from association with his child. This court must not punish either parent, for to do so would not promote the welfare of Margaret.

Ordinarily in cases in which an appellate court may make its own findings, the judgment of the trial court will not be reversed and the cause remanded, save with direction. In this case, however, a most unusual situation is presented. The decree was modified February 7, 1938; motion for new trial was filed three days later. Among the grounds stated in the motion was one to the effect that plaintiff's husband had not been employed permanently, as stated by him and his wife, but had been employed as an extra steam fitter between September 1, 1937, and the date of the trial, and that plaintiff and her husband were not maintaining a home anywhere; that about November 12, 1937, plaintiff's husband ceased to have employment; that at that time he was going from place to place and was either in Pittsburgh or Philadelphia, Pennsylvania, in search of employment; that plaintiff, between the time of the trial and the filing of the motion, had not returned to Chicago but had lived and stayed in various places in Kansas City, Missouri. The motion was taken under advisement and the parties under stipulation took the deposition of plaintiff concerning the matters alleged in the motion on February 25, 1938. Plaintiff, when her deposition was taken, testified that she left her home in Chicago one week preceding November 4, 1937, went to her father's home in Des Moines, Iowa, from there to Kansas City, and had not since been in Chicago; that while in Kansas City she stayed with her uncle and sister; made a trip to Des Moines on Thanksgiving and then returned to Kansas City; that she had not seen her husband after the hearing on the motion to modify the judgment; that when she left Chicago her husband was employed by Wm. A. Pope Company; that that employment ended the latter part of November, approximately November 17; that her husband remained in Chicago until about Christmas, when he went to Pittsburgh and was there for a week or ten days, then returned to his home in Chicago, remained there until in January or February and then went to Pittsburgh where he remained; that her husband was working for the Carnegie Steel Works east of Pittsburgh, 20 or 23 miles; that she did not know the exact day he went to work; that she had

received numerous letters from her husband, evidently written and mailed in Pennsylvania.

In ruling the merits of this appeal we cannot consider the facts disclosed in plaintiff's deposition taken in support of the motion for new trial. The facts thus disclosed, had they been brought forward in the trial, should have produced a different result. Such facts show plaintiff's husband did not have "steady" employment; that his so-called steady employment terminated about November 17; that he was unemployed until in January or February; that neither plaintiff nor her husband had a home and residence anywhere.

It must be borne in mind the evidence to the effect that Wade was employed in Pennsylvania was hearsay; no effort was made to prove that fact, if it were a fact, by competent evidence. The presence of plaintiff's husband in Pennsylvania was established by competent evidence, namely, by the fact many letters passed between him and plaintiff.

The decree, if enforced, would take Margaret from a home in which she is happy, separate her from her associates, her father and family, materially interfere with her education, and place her in the sole control of her mother whom she does not know, put her in a position in which she must depend for food, clothing, shelter and education upon a stepfather with whom she is not acquainted and who, under the law of the State in which he resides, may or may not be legally liable for her support, and who, however willing, may not be able to maintain and educate her.

From the foregoing we hold the competent evidence was not sufficient to sustain the decree from which this appeal is prosecuted; that the motion for new trial should have been sustained.

Evidence relating to conduct of the defendant prior to September 30, 1929, covers many pages of the record. In ruling the cause we have not considered that evidence for the reason modification of the decree cannot be based thereon. Thus the evidence showing defendant contracted prior marriages should not have been received, nor should defendant's denial of the fact that he contracted one of said marriages have influenced the result for the reason such questions were concluded by the judgment of September, 1929, and were therefore immaterial.

The judgment, insofar as the allowance of attorneys' fees is concerned, is affirmed; and insofar as it affects the custody of Margaret, is reversed and the cause remanded. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment, insofar as the allowance of attorneys' fees is concerned, is affirmed; and insofar as it affects the custody of Margaret, is reversed and the cause re-

674

manded. *Shain, P. J.*, and *Bland, J.*, concur; *Kemp, J.*, not sitting because not a member of the court at the time the cause was argued and submitted.