233 S.W.2d 42 (1950)
HENSLEY
v.
HENSLEY.
No. 21399.
Kansas City Court of Appeals, Missouri.
October 2, 1950.
C. C. Ross, Bethany, for appellant.
Pershing Wilson, Kansas City, for respondent.
VANDEVENTER, Judge (sitting by order of the Supreme Court).
This is an appeal from the modification of a decree for care and custody of children. This kind of a case is heard de novo in this court and it is our duty to render such judgment as we think, upon proper evidence the trial court should have rendered, at the same time giving due deference to its decision, because it saw and heard and was in a better position to pass upon the credibility of the witnesses. Lambert v. Lambert, Mo.App., 222 S.W.2d 544; Parks v. Cook, Mo.App., 180 S.W.2d 64; Hawkins v. Thompson, Mo.App., 210 S.W.2d 747; Wells v. Wells, Mo.App., 117 S.W.2d 700; Angus v. Angus, Mo.App., 225 S.W.2d 795.
Furthermore, in deciding the issues, we must apply equitable principles. State ex rel. Couplin v. Hostetter, 344 Mo. 770, 129 S.W.2d 1; Hayes v. Hayes, Mo.App., 75 S.W.2d 614. Couplin v. Couplin, Mo. App., 121 S.W.2d 186.
We might also observe that modification of a previous decree for the care and *43 custody of children must be based upon evidence of a change in conditions, subsequent to the rendering of the decree sought to be modified, which requires a modification because it would be beneficial to the interests of the children. Martin v. Martin, 233 Mo.App. 667, 125 S.W.2d 943; Hamilton v. Atwill, Mo.App., 130 S.W.2d 640; Williams v. Williams, Mo.App., 211 S.W.2d 740. Shepard v. Shepard, Mo.App., 194 S.W.2d 319; Hawkins v. Thompson, Mo.App., 210 S.W.2d 747.
Bearing these principles in mind, we shall briefly outline the testimony as reflected by the record. This testimony is rambling, disconnected and a large part of it relates to immaterial matters that happened prior to the original decree. For convenience and clarity, we will refer to the parties as plaintiff and defendant, the roles they played in the trial court.
They were married November 13, 1937 and in 1944, they were living at Ridgeway, Missouri as husband and wife. They, at that time, had two children, Donna Janet, age 7 and Carl Wayne, age 5. The defendant in March, 1944, was inducted into the military service. His wife gave birth to another child (Chester Eugene) about November thereafter. The two eldest children were taken by plaintiff to live with defendant's parents at Ridgeway and she maintained a home for the youngest child in the same town, for about a year. While she worked, a maid attended the child and kept house for plaintiff. She received an allowance from the government by virtue of her husband's military service but, apparently, it was insufficient to meet the needs of the family and she sought employment elsewhere. This allowance was expended for the support of plaintiff and her children and part was used to make the payments on her house which was afterwards sold. She worked various places until her husband returned from the Army about November, 1945. Upon his return from the Army, he went to St. Joseph and then to Kansas City to work. While he was in the Army, he very seldom wrote to his wife and after he returned from the Army, according to his testimony, he never lived with her as man and wife. She testified they lived together about a week, "couldn't make a go of it," and mutually agreed to separate. She sued for and procured a divorce from him on July 11, 1947 and was awarded care and custody of the children, $60.00 per month for their support, $25.00 per month alimony and $100.00 attorney's fee. He was personally served with summons and a copy of the petition but paid no attention to it, in fact, did not even read it.
For a time after the divorce, the children were with defendant's mother in Ridgeway and plaintiff testified that she left them with defendant's mother at the suggestion of the court until her financial circumstances were such that she could take care of them.
Within approximately 60 days after the divorce, in September, the defendant remarried, moved back to Ridgeway in the house with his mother, where the plaintiff had left the children. He lived there until March, 1948, and then moved to a place near Kansas City, taking the children with him, without the knowledge or consent of plaintiff. She was employed in Kansas City and upon learning where the children were, frequently visited them there, as she had previously done while they were with defendant's mother.
On February 21, 1949, plaintiff married Elmer Meeks. They purchased a cafe near 12th and Holmes Street in Kansas City and began operating it. The operation was a financial success and at the time of the hearing on the motion to modify, they were clearing about $125.00 per week in the restaurant business. They had a one room apartment, with bath, in the same building at the rear of the restaurant, where they lived with Donna, the oldest child. The evidence showed that this apartment, though small, was clean and well kept. Plaintiff's mother lived in Kansas City in a nice, modern, well kept six room house, near a park, and plaintiff placed the two boys in the custody of her mother and paid her $50.00 per month for taking care of them. She either visited them or took them to her home nearly every weekend. The children were well dressed, clean and were regularly attending school, and plaintiff *44 and her husband paid the tuition. Plaintiff and her present husband also testified that it was their intention to sell the restaurant and move to a suburban tract near Kansas City or to Trenton, Missouri.
The defendant lived on a suburban tract near Highway 40, near a night club known as "The Night Hawk Tavern." In the house with defendant lived two other persons, his brother and wife, and defendant's infant child (17 months of age) by his second marriage.
Shortly after plaintiff remarried and obtained the restaurant and apartment in the rear, she drove out to her ex-husband's premises, where the three children had been staying, and brought them back to Kansas City with her. She had found them dirty, ragged, barefoot and unkempt.
The evidence showed that Donna lived with her mother in the apartment in the rear of the restaurant, would arise about 7:30 of a morning, would go to school at 8:30 and return to her home about five minutes before 4 o'clock. Sometimes her mother would let her put on some roller skates and skate on the sidewalk near the restaurant. But about 7 o'clock, she would have her dinner and retire to the apartment, where she would study her lessons or otherwise engage herself. Sometimes she would go to the picture shows with a lady and her young daughter who was about the same age as Donna. The testimony showed that the children were protected by insurance policies taken out by plaintiff and her husband.
Part of the time after his return from the service and while the children were with defendant's mother, he paid $35.00 per month for their support.
The court, after hearing the evidence, modified the decree giving the care and custody of the three children to the defendant with rights of visitation in plaintiff. The court also ordered the defendant to pay $100.00 as attorney's fee for plaintiff on the hearing to modify and upon the appeal to this court, the trial court ordered defendant to pay plaintiff to prosecute her appeal, the sum of $125.00. None of the alimony, child support, attorney's fee, expenses on the hearing of the motion to modify, or expenses of appeal was ever paid by the defendant, although the evidence showed he was earning about $300.00 per month. The only money that plaintiff ever received from him after the divorce was $50.00, which was half of what he called "the terminal leave bond" received from the government after defendant's discharge from the Army and plaintiff testified that the only reason this amount was received by her was that her father had the check, cashed it and gave it to her.
The defendant claimed that he knew nothing about the judgments for alimony, child support, suit money or attorney's fees being rendered against him. He admitted, however, that plaintiff had had him arrested for non-support after the divorce was granted. What happened to that controversy does not appear. He also claimed that before the divorce action was instituted, he had made an agreement with his wife, the plaintiff, that in the event of a divorce, he would be entitled to the custody of the children fifty percent of the time. This agreement was emphatically denied by the plaintiff.
There was testimony that there was a number of taprooms in the vicinity of plaintiff's restaurant and home and that in some of them dancing was permitted.
The grounds for his motion to modify, briefly stated, were: that the "plaintiff has not provided such care (for the children) as provided for by the decree;" that the "present environment is and has been unfit for the proper bringing up, care and wellbeing of all of said children;" that plaintiff, since the decree, has "demonstrated a lack of responsibility for said children, a lack of marital affection for them, a total disregard for their best interests and welfare, all to disregard of the order of this Court and contrary to the legal responsibility imposed upon her by law; * * *."
It was further alleged that the plaintiff lacked the "proper moral character and discipline to have the control and supervision over the lives of said children." If defendant had been describing his own actions, in his motion to modify, it would *45 have been more accurate. While in the Army, he had refused to correspond with the plaintiff. After his return from the Army he had refused to live with her. When she sued for divorce, he was so unconcerned about it he never read the petition, never filed an answer and never appeared in court to contest the litigation. According to his own statement, he was so disinterested, he never took the trouble to find out what kind of decree was rendered in the cause. He claims that he did not know any of these judgments were rendered against him, yet his second wife testified that when she married him, she knew about them and it is passing strange that if she knew about it, he didn't. The evidence does not show that his residence would be a better place for the children than where they are living. In all the time since the divorce, while the children were in the custody of the plaintiff, the evidence shows that he has not contributed one cent toward their support, clothing, schooling or otherwise.
The evidence does show that plaintiff was a hard worker, was sending the children to school, was supporting them, was clothing them, had taken out insurance policies for their benefit and apparently was doing all that was necessary or could be done by her for their support under the circumstances. Their situation might have been better if he had made some contribution to the support of his children but this he did not do.
He was asked on cross examination what he meant by the allegation in the motion that defendant "showed a total disregard for their (the children) best interests and welfare" and he replied, "She did not pay attention to their schooling." He then stated he knew nothing about their schooling.
When asked what he meant by charging his wife with a "lack of moral character", he said she whipped the boys when he was in the Army. "She took a little switch once in a while and paddled them." This occurred before he went to the service.
It is probably true that the location of the restaurant and the apartment in the rear, is not the best place to rear a child, but from all this evidence we think the plaintiff, when she was able, has done all that she could for her children. She has certainly done much more than the defendant.
We believe that the action of the trial court in modifying the decree was an abuse of judicial discretion, to which we should not defer. It still retains jurisdiction of the cause and should there be such a change in conditions later as would justify a modification, it has jurisdiction to meet that issue, when it presents itself.
Plaintiff filed a motion to dismiss defendant's brief for the reason that he had failed to obey the orders of the trial court in relation to the payment of alimony, child support, suit money and attorney's fees. This motion will be overruled.
The judgment of modification should be reversed. It is so ordered.
DEW, P. J., and BROADDUS, J., concur.
CAVE, J., not sitting.