Rosemary Forbes **RUTSTEIN** (Now Bickley), (Plaintiff), Appellant,

v.

Calvin Albert **RUTSTEIN** (Now Rutledge), (Defendant), Respondent.

No. 30294.

St. Louis Court of Appeals. Missouri.

June 16, 1959.

Cobbs, Armstrong, Teasdale & Roos, J. Terrell Vaughan, Walter M. Clark, St. Louis, for appellant.

Lawrence J. McKim and Samuel J. Kevrick, St. Louis, for respondent.

BRADY, Commissioner.

This is an appeal from a judgment of the Circuit Court of St. Louis County modifying the provisions of a divorce decree with reference to the custody of Paul Grady Rutstein (now Rutledge). The original decree of divorce was granted to the appellant on May 17, 1951, and she was awarded custody of the said Paul Grady Rutstein with respondent given the right of visitation "at reasonable times" and ordered to pay the sum of $10 per week for the support of the said child. Thereafter respondent filed a motion to modify on January 3, 1952, and again on January 24, 1957. Both of these motions dealt with the visitation privileges granted the respondent by the original decree. The former motion was withdrawn by respondent upon a stipulation being entered into by the parties and the latter was ruled against him by the trial court, who sustained appellant's motion to dismiss.

On March 31, 1958, the respondent filed the motion to modify which is the subject of this appeal. On November 21, 1958, the trial court, having overruled the appellant's motion to dismiss, which was based on the ground that respondent's motion did not allege any change in circumstances which would justify modification, entered its order modifying the original decree and granted temporary custody to respondent on alternate week-ends and for three weeks during the summer. Appellant's after-hearing motions were denied on December 18, 1958, and at the same time the trial court struck from its order of November 21, 1958, the provision for respondent's temporary custody for three weeks in the summertime.

On the 29th day of December, 1958, (the 28th being a Sunday) notice of appeal was filed by which appellant, proceeding under § 510.330 RSMo 1949, V.A.M.S., appeals only from that part of the court's order granting temporary custody to respondent on alternate week-ends from 1:00 P.M. Saturday to 7:00 P.M. on Sunday.

This court's jurisdiction is invoked by virtue of § 452.110 RSMo 1949, V.A.M.S., as well as by the territorial jurisdiction conferred by Article V, Section 13, Constitution of Missouri 1945, V.A.M.S.

Appellant, by her motion for new trial and by brief filed here, raises four points in support of her contention that the trial court erred in modifying the custody provisions of the original decree: (1) that

respondent's motion to modify fails to allege any change of facts or circumstances requiring or justifying modification and thus fails to state a claim upon which relief can be granted and, therefore, appellant's motion to dismiss should have been sustained; (2) that age alone is not a sufficient change of condition to warrant modification; (3) that the trial court gave preference to the wishes of the respondent rather than to the welfare of the child; and (4) that the trial court's order constitutes, at best, an experiment in which courts should not indulge by forcing a substantial change in the routine of a well cared for and adjusted child of tender years.

■ On appeal from an order or judgment modifying a decree of divorce, we must review the whole record as in cases of an equitable nature and decide the case on its merits, according to the interests of the child, having in mind a proper deference for the findings of the trial court on disputed questions of fact where matters of credibility of witnesses are involved. The appellate review is a trial de novo. Wilson v. Wilson, Mo.App., 260 S.W.2d 770, and cases cited; Rone v. Rone, Mo. App., 20 S.W.2d 545; Hawkins v. Thompson, Mo.App., 210 S.W.2d 747; Fago v. Fago, Mo.App., 250 S.W.2d 837; Hensley v. Hensley, Mo.App., 233 S.W.2d 42; Hawkins v. Hawkins, Mo.App., 250 S.W. 2d 817; Richards v. Hayes, Mo.App., 320 S.W.2d 65.

The evidence was that following the divorce each party remarried and each has a child by the second marriage; that the respondent has always paid the support money for said child, and that there is no question of the moral fitness of either party. Respondent's testimony was that, he had seen his son fifteen times since the hearing on the May 16, 1957, motion and that when he had called the appellant and made arrangements to see his son in accordance with the stipulation each party had signed, he was told that week-day evenings during the school year were not available to him; that he could not go out at all after supper; that Sundays were also unavailable; that Saturdays were all that were available to him and that since he didn't know when he was going to have to work on Saturdays, he couldn't obey the stipulation by calling ahead. He testified that when the visits did take place he had to visit Paul at his maternal grandparents' home and that appellant was in the room all the time except when she would leave for a few minutes to go to the kitchen or something; that the child would be eight years old on December 21; that he had worked in one place for the last 17 years and was not addicted to intoxicating liquor nor did he have any disease which might be communicated to the child. On cross-examination respondent testified that he had only seen his son five times in 1958, and that for the five years before the hearing on the motion of May 16, 1957, he hadn't seen his son and that during that time he never inquired about him as to his health or school activities, nor sent him presents, and that prior to the hearing on the May 16, 1957, motion he would not have known his son had he met him on the street. He testified that he believed appellant had taken good care of the child and he had once told appellant he would agree to the adoption of his son by appellant's husband if she were never going to let him have a father-son relationship with Paul. In response to the question of the court as to why respondent did not see his son for five years, he testified that he and appellant never could agree upon what constituted proper and reasonable visitation rights and that there was such interference with his visitations he was too emotionally upset to continue the visits. On re-cross he testified that during this five-year period there was no real attempt by appellant to prevent his visits but that he just didn't go and on re-direct stated this was due to the trouble he had had seeing the child prior to the five-year period. Respondent's wife testified that she would like to have the child come into her home on visits.

Appellant's testimony was that respondent had not seen his son more than twenty times since the divorce and of these ten times had been since the May 16, 1957, hearing; that he came to see the child July 9, 1957, and every week in July thereafter, about three times in August, and that on August 20 he called and cancelled his visit since he had to work; that he had called in December to come visit the boy but Paul was ill and that visit was made on January 4; that another visit was made on February 15 and again on April 12; that he called on July 31 and asked to see Paul but that she would not agree since her parents had out-of-town company and the last time he saw Paul was on September 13. Appellant further testified that on July 31 he had told her over the telephone that he wanted the child adopted or he was coming to court to try to get further privileges with his child; that for four years and ten months prior to the May 16, 1957, motion, respondent had not seen his son; that when respondent was seeing the boy in the summer months of 1957, she could hear Paul crying; that he started to have trouble with urorrhea; that he was very emotionally upset and would run off when it came time for visits; that he had started off well in school but recently she had had a conference with his teacher who had recommended child guidance for Paul. Appellant further testified that she did not feel she had ever prevented respondent from seeing Paul and that other than illnesses and the time her parents had out-of-town company she had raised no objections; that she had allowed respondent to see Paul alone for the first, second or third visits until she found he was saying upsetting things to him, such as when Paul told her respondent was insisting Paul call him Daddy, and when Paul was crying on one occasion, respondent told Paul that respondent's son by his present marriage was more Paul's brother than appellant's daughter by her present marriage was his sister; that Paul calls Mr. Bickley Daddy and had "expressed a desire to me to call him (Rutledge) Calvin and I thought under the circumstances his wishes were paramount." In response to the court's question appellant stated that respondent was never permitted to see the child alone after those first two or three times.

It has long been the rule in this state that the burden is on the party seeking modification to allege and prove the change of facts and circumstances which, for the best interest of the child, require or justify modification of the original decree. Salkey v. Salkey, Mo.App., 80 S. W.2d 735; Neustaedter v. Neustaedter, Mo.App., 305 S.W.2d 40. While a mere change of age alone may not be sufficient to warrant modification, Hurley v. Hurley, Mo.App., 284 S.W.2d 72, we are not ruling that point here since this record discloses a change of condition far beyond the mere additional years Paul now has as compared to his age at the time of the original decree. This record discloses either a calculated plan on the part of appellant to void the court's original order for respondent's visitation privileges or such a callous disregard for the court's order on that point as to deprive respondent of his right to "see and visit said child at reasonable times." Appellant required the respondent to visit his son only on the one day of the week when he could not do so and keep his employment. When visits did take place they were under such conditions as to prevent any actual opportunity for Paul to get to know his father, or respondent his son. Visitations under the conditions disclosed by this record amount to an interference with the right of visitation granted to the respondent by the trial court. It has been repeatedly held that in cases of the nature here involved, where the jurisdiction of the trial court continues until the child reaches majority, if one parent's conduct in regard to the child is such as to deprive the other parent of his right to temporary custody or of visitation, such fact will be ground for modification. Dimmitt v. Dimmitt, 167 Mo. App. 94, 150 S.W. 1107; Baer v. Baer, Mo. App., 51 S.W.2d 873; Olson v. Olson, Mo. App., 184 S.W.2d 768; Rone v. Rone, Mo.

App., 20 S.W.2d 545; Luethans v. Luethans, Mo.App., 243 S.W.2d 801. This disregard for the rights of respondent under the original decree is not only significant as a changed condition but also as a factor in passing upon the welfare of a child. Williams v. Williams, Mo.App., 211 S.W.2d 740; Green v. Perr, Mo.App., 238 S.W.2d 922. Where one parent acts in disregard of the decree so as to deny the other parent the rights he has under that decree the court is not restricted to mere punitive measures but may modify the decree in such manner as to insure the carrying out of those provisions which it conceives to be for the best interest of the child. Olson v. Olson, supra; Green v. Perr, supra.

Neither can we agree with appellant that respondent's conduct in seeing his son some twenty times since the entry of the original decree (accepting appellant's evidence on the point) disqualifies him from now seeking to enforce the rights granted him under the original decree. The divorce was granted in May 1951, and on January 3, 1952, respondent filed his first motion to modify. This motion was later withdrawn by respondent upon the filing of a stipulation signed by the parties concerning rights of visitation which were even then causing difficulty. A few days over five years elapsed before the respondent filed his next motion to modify and during that time he did not see his child, but respondent explained this lapse of time to the satisfaction of the trial court when he stated that this passage of time was the result of the difficulties he had experienced in seeing the child and his hope that when the boy became older the court might consent to visitation privileges in respondent's home. The record discloses that he has been diligent and indeed persistent in seeking modification since that time. It is admitted that respondent has always been faithful in the payment of support money for his son. This is not a case where respondent can fairly be said to have lost interest in his son. We are of the opinion that the trial court had good ground upon which to enter a modification of the decree.

However, we are also of the opinion that since respondent and his son have not had an opportunity to develop that relationship to which the respondent is entitled under the provisions of the original decree, and to which Paul is entitled by virtue of the unquestionable value that must inure to a child from knowing both of his parents, where there is no question of the fitness of either parent involved, Baer v. Baer, supra; Green v. Perr, supra, the modification as entered by the trial court does go too far too fast. Paul is now 7 years old and while we have doubts that the adjustment of son to father will be as difficult as appellant contends once they are afforded a proper place and time to meet regularly, nevertheless some adjustment will have to be made. It is our opinion that a proper exercise of discretion requires a further modification of the order of November 21, 1958, as amended December 18, 1958, by deleting therefrom the provisions for custody by the respondent on alternate weekends and by substituting therefor a provision for respondent's custody for one weekend of each month. In addition to that modification, in view of the difficulties that have been encountered in the past with custodial provisions in this case, not only should the modification state the time the weekend is to begin and end, as the modification which is the subject of this appeal does, but should also state the specific weekend of each month upon which the visits are to take place, and that these visits are to be allowed away from appellant's home. This latter provision may be inferred from the modification ordered by the trial court but since every effort should be made by the court to prevent Paul from becoming the subject of any further custodial proceedings, the order of modification should so state. To avoid as much friction between the parties as possible, friction that can only result in detriment to Paul, the trial court will want to have conferences with the respondent's and appellant's counsel and they, in turn, with their clients before the specific time and weekend is stated and we, there-

fore, leave that matter for the trial court's order.

The Commissioner recommends that the judgment be reversed with directions to the trial court to modify the order of November 21, 1958, as amended December 18, 1958, to provide for temporary custody by respondent in accordance with the opinions expressed herein.

PER CURIAM.

The foregoing opinion by BRADY, Commissioner, is adopted as the opinion of the Court. The judgment is, accordingly, reversed with directions to the trial court to modify the order of November 21, 1958, as amended December 18, 1958, to provide for temporary custody by respondent in accordance with the opinions expressed herein.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.