**D. J. H., formerly D. J. S., Plaintiff-Respondent,**

v.

**J. D. S., Defendant-Appellant.**

**No. 34318.**

Missouri Court of Appeals, St. Louis District, Division Two.

May 23, 1972.

Harold G. Johnson, St. Ann, for defendant-appellant.

James A. Blackwell, St. Charles, for plaintiff-respondent.

PER CURIAM.

This is an appeal by the appellant-husband, J.D.S., from an order of the circuit court denying the husband temporary custody or visitation rights of two minor daughters born of the marriage on the respondent-wife's motion to modify.

The parties, D.J.H., plaintiff-respondent (hereinafter referred to as the wife) and J.D.S., defendant-appellant, (hereinafter husband) were divorced on December 16, 1969 and custody of two daughters, Tamara and Michelle, born in 1963 and 1964 respectively, was granted to the wife. The husband, J.D.S., was granted temporary custody of the children on alternate Saturdays and Sundays from 9:00 a. m. to 6:00 p. m. and reasonable visitation rights, provided that the husband's mother or brother be present at all times with the husband and the daughters during the period of temporary custody, and provided that he notify the wife of his intention to take temporary custody on the weekend.

For some seven months after the decree of divorce the husband had temporary custody in accordance with the decree, until the weekend of July 26, 1970. Thereafter the husband was refused his temporary custody. On December 30, 1970, husband filed an affidavit of citation for contempt alleging that the wife refused to permit him to visit the children or permit "defendant to assume temporary custody of them on alternate Saturdays and Sundays" in violation of the decree. The wife filed a counter-affidavit alleging nonadherence to the decree and prayed that the court find the husband in contempt. The wife also filed a motion to modify and to terminate the husband's rights of temporary custody, alleging a material change in the conditions and circumstances since the date of the divorce, and that she has since remarried and she and her present husband both desire exclusive custody of the daughters.

In her motion she alleged that the husband is "mentally unstable" and has threatened to kill himself and the daughters; that he attempted to burn his home when the daughters were present and threatened to kill the daughters so that the wife would suffer. She also alleged numerous threats to her present husband and her present father-in-law. On the date of the trial, J.D.S., the appellant-husband, orally moved that the wife be restrained from moving from Missouri and that his temporary custody rights be increased.

On January 26, 1971, trial was held. The trial court heard all the motions and counter-motions at one time by agreement of counsel.

The evidence is voluminous, often confused and contradictory. Basically there appears throughout the record a conflict between J.D.S., the husband, and his former wife's present husband, James, and his father, Slim. There is no need to detail each bit of evidence to reach our conclusion.

J.D.S. has been in failing health for years prior to the divorce. Since the age of seven he has had diabetes and takes daily injections of insulin. As a result of the diabetes he has had failing eyesight since 1968 and became almost totally blind in November, 1970. Three operations have been performed on his eyes, the first one in February of 1969, the day that the husband and his wife, the plaintiff, parted. At the time of the trial he was blind. He receives social security benefits and a blind pension. He admitted to attempted suicide by closing all the doors and windows at his home and turning on the gas but was saved. He acknowledged that he and James and Slim have had numerous disagreements, fights, and arguments commencing before he and his wife were divorced. He admitted making a statement to Slim about what can be done with a knife. He had been treated as an out-patient in Malcolm Bliss Hospital. Witnesses for the plaintiff-wife detailed numerous incidents of violence and threats which were all denied by him.

The wife's evidence of the conduct of the defendant-husband consisted of the testimony of four persons: the wife; her present husband, James; his father, Slim, and a friend, Brown. Slim testified that in a telephone conversation with the mother of J.D.S. he asked why J.D.S. tried to burn the house and the mother replied that, "Oh, he just done that to aggravate me." He further testified that J.D.S. threatened him on several occasions. On one occasion when a threat was made, he said "I'm going to kill them damn kids to get even with that slut."

Brown testified that he was acquainted with the husband for several years prior to the divorce and in January, 1970 he was present when the husband telephoned Slim and threatened him with a grenade. He testified that he was present when the husband and his mother had an argument and the police were summoned. On one occasion the husband asked him for dynamite to blow up James' car and when he asked "What would happen if the two girls would happen to be in the car," he replied he didn't give a damn about them.

James testified that he was threatened and that he said he "didn't care about the kids. He wanted to get even with D. (wife)."

The plaintiff-wife testified that on July 26, 1970 after visiting their father, the daughters came home crying because "Grandma had shoved Michelle into the wall" and that J.D.S. and his mother had an argument.

Except for the attempted suicide and the statement to Slim about what could be done with a knife, the husband denied all of the other allegations. Witnesses for the defendant stated that he had never threatened to harm his children or perform any act which would cause injury to the children, and neighbors said that they were

not reluctant to have children be around the husband.

On July 26, 1970, the last time the husband saw his children, there is much dispute as to what happened. The wife's evidence indicated that one of the children was abused by the husband's mother and that the husband tried to burn the garage and house and that he had a quarrel with his mother. As a result of this, the children came home and started to cry so that the wife decided this was the end to the husband's temporary custody. The husband and his witnesses denied all these occurrences. Witnesses for the husband testified that the father never attempted to harm the children nor made any threats on the lives of the children nor did anything that would show that he was not a good father. A friend of the husband, present on July 26 at the husband's house, denied that the husband had tried to burn the garage or house or that he had ever threatened Slim.

Prior to the rendition of the order of the trial court, the husband was examined by a psychiatrist. The report indicated that he "seems to be generally interested in seeing his children" and his "past behavior pattern is similar to that in people that are often diagnosed as suffering from a personality disorder, unstable type, although he does not seem to be seriously, so, . . ." The psychiatrist reported "it would not seem to be unreasonable for him to be able to visit with his children with some mutually agreeable chaperone on a regular basis."

On June 4, 1971, the court entered its order modifying the decree ". . . to provide that the plaintiff [wife] have the care, custody and control of the parties' minor children and that defendant [husband] hereafter have no temporary custody nor visitation rights or privileges with said minor children."

After post-trial motions were overruled, the husband appealed.

On appeal the husband contends that the judgment of the trial court is too harsh in that there was no credible evidence of harm that may be caused to the children if the husband continued to have temporary custody rights, (2) that the trial court failed to consider the refusal of the wife to obey the original court order and made its ruling based on her wishes, (3) that the wife having the burden of proof failed to prove that husband was guilty of improper conduct as to constitute a change of circumstances detrimental to the welfare of the children.

■ This is a court tried case. On appeal from an order or judgment modifying a decree of divorce the appeal is de novo and we are required to review the whole record as in cases of an equitable nature and decide the case on its merits, according to the best interests of the children, keeping in mind a proper deference for the findings of the trial court on disputed questions where matters of credibility of the witnesses are involved. Rutstein v. Rutstein, Mo.App., 324 S.W.2d 760; Ackermann v. Ackermann, Mo.App., 280 S.W.2d 425. It is our duty to review the whole of the record and decide the matter before us on its merits. We must be mindful that the party seeking modification has the duty to show changed circumstances and conditions since the original decree of divorce. But the pole star that must guide us throughout and the predominant rule that must be followed is that the best interests and welfare of the children must be served. Patterson v. Patterson, Mo.App., 375 S.W.2d 614; Emerson v. Emerson, Mo.App., 419 S.W.2d 291; Kelch v. Kelch, Mo.App., 462 S.W.2d 161; Stockton v. Guthary, Mo.App., 415 S.W.2d 308. "The welfare of the child is the prime consideration in any adjudication of its custody, and the rights and claims of the contending parties, even parents, are matters of secondary importance." Stockton v. Guthary, supra, l. c. 311. In such cases, interests, convenience, and wishes of either or both parents must be subordinated to the inter-

ests of the children of a broken marriage. Emerson v. Emerson, *supra*. Modification is justified if the facts, circumstances or conditions require a change of custody in order that the best interests and welfare of the children may be promoted. M. v. M., Mo.App., 313 S.W.2d 209. Mere passage of time or the gratification of the wishes of the parents does not justify modification, and the burden is on the party seeking a modification to show the changed circumstances. Rutstein v. Rutstein, *supra*.

After a thorough examination of the record and all of the evidence, we conclude that there was ample and sufficient evidence to support the judgment of the trial court. Denying custody and visitation rights to a father who has long suffered from illness, disease and blindness, is not a welcome and pleasant task. But the uppermost and controlling consideration is whether the trial court had sufficient evidence to deny temporary custody and visitation rights to the husband in the best interests and for the welfare of these children. The trial judge found that the best interests would be served by permitting the wife to have the custody and his judgment should be deferred to, in the absence of a showing that it is clearly in conflict with a preponderance of the evidence or discloses a manifest abuse of judicial discretion. Lampe v. Lampe, Mo.App., 28 S.W.2d 414; Birrittieri v. Swanston, Mo.App., 311 S. W.2d 364.

There was substantial evidence for the trial court to believe that since the divorce the husband evinced a somewhat unstable mentality; that he made statements concerning the children detrimental to their welfare and that he had a behavior pattern similar to that in people often diagnosed as suffering from personality disorder and that he exhibited tendencies toward violence.

The appellant-husband relies on decisions terminating parental rights under the juvenile code, § 211.441, RSMo 1969, V.A.M.S. But we are not here faced with a situation which terminates the rights of the husband *forever* as under that procedure. The order of the trial court does not terminate custody rights forever; it is not a permanent and binding order, but such jurisdiction continues during the lives of both parties and until the children attain their majority, Patterson v. Patterson, *supra*.

The trial court heard the evidence. He was in a position and had the opportunity to judge the parents' character and fitness to have custody of these small children. In such a situation, his finding should not be lightly disturbed. His findings should be deferred to unless the clear preponderance of the evidence justifies otherwise, and unless his judgment is "clearly erroneous." We have reached the conclusion that the trial court was fully justified at this time in making the order entered.

The order of the trial court is affirmed.

DOWD, P. J., and SMITH and SIMEONE, JJ., concur.