J_____ F. R_____, Plaintiff-Respondent,

v.

R_____ R_____, Defendant-Appellant.

No. 34313.

Missouri Court of Appeals,
St. Louis District,
Division No. 1.

June 20, 1972.

Wion, Burke & Boll, Clayton, for plaintiff-respondent.

Charles M. Warner, St. Louis, for defendant-appellant.

CLEMENS, Judge.

Three months after the plaintiff-mother was granted a divorce and custody of the parties' two children the defendant-father moved to modify the decree as to child custody. The gist of the motion is that after the divorce his wife demonstrated maternal unfitness by attempting suicide and by intimately associating with another man. The father appeals from the denial of his motion.

In deciding the fitness issue we review the entire record de novo and decide the case on its merits, according to the best interest of the children, giving deference to the trial court where credibility of witnesses arises. Rutstein v. Rutstein, Mo. App., 324 S.W.2d 760[1]; Rule 73.01(d), V.A.M.R. The facts, as we find them to be, follow.

The father is a physician in his 40's, the mother is 12 years younger, and they have a son ten and a daughter six. The divorce was granted in August, 1970. The mother remained in the family home with the children and the father took up residence at the hospital where he practiced. He was given liberal temporary custody rights and exercised them fully. If granted custody the father would acquire a home and his cousin and her son would live there.

A few days after the divorce the mother became ill and the father moved back into the family home, staying for a month. During this time the mother met a young unmarried man, D_____ D_____, who was ten years her junior. A week or so later she and he drove to California and were constant companions for ten days. The children remained at home with their father and the family's domestic servant. For the next several months the mother continued her association with D_____ D_____, who sometimes stayed overnight in the home when the children were with their father.

In mid-November 1970 the mother gave a birthday party for D_____ D_____ and his friends and she became intoxicated. She had been ill and despondent and after the guests had left she cut both wrists with a knife. The wounds were superficial and the attending physician termed the incident a "suicidal gesture."

Three days after this incident the father filed his motion to modify. The first of three partial hearings was in January 1971. At the conclusion of this hearing the judge cautioned both parties about misconduct affecting the children and warned that could result in denying child custody to either parent. This warning seems to have had a profound effect on the mother. She virtually ceased her association with D_____ D_____ and stopped his overnight visits. The mother readily acknowledged the impropriety of her past association with D_____ D_____ and the "suicidal gesture." At the second and third partial hearings the mother was apologetic and contrite over her past misconduct and convinced the trial court that since his admonition she had "put the children's interests first."

Numerous lay and professional witnesses testified about the parties' respective pa-

rental fitness. Both are intelligent and considerate parents, loved by the children. The father is strict and protective of his role as head of the family. In times past his actions toward his wife were violent. His own witness-psychiatrist described him as "somewhat schizoid and paranoid," but nonetheless "capable of taking care of the children."

The same psychiatrist described the mother as unstable, immature and irresponsible, and he doubted her ability to take care of the children. The mother's own witness-psychiatrist acknowledged she had "reacted to very stressful situations in a temporarily wrong manner" but she was neither psychotic nor seriously neurotic, and had "a strongly developed sense of loyalty to her children."

This last conclusion is borne out by the evidence of maternal care since the divorce. She keeps the home clean and orderly. The children are well dressed and well scrubbed; they are mannerly and loveable. Their school record shows perfect attendance; scholarship is above average, their relationship with teachers and peers is excellent and their "appearance and indication of care" is "outstanding." The mother is a "room mother" at school and interested and active in school affairs. The children are responsive to her interest and affection.

■ We have studiously considered the entire record here and the cases cited by the father. We have omitted a recitation of facts deemed immaterial to the issue of the children's welfare. As said, the gist of the husband's complaint relates to the mother's "suicidal gesture" and her association with D————— D——————. But past moral lapses do not in themselves make a parent unfit, and are to be measured by the effect, if any, they have on the children's welfare. We believe the evidence as a whole fails to show the mother's past misconduct has or will hereafter affect the children's welfare.

As said in H——————— B——————— v. R——————— B———————, Mo. App., 449 S.W.2d 890[1]: "Few problems have absolutely satisfactory solutions. In child custody cases the trial judge rarely enjoys the luxury of deciding between a good home and a poor one. Often he must select the better of two poor ones. His decision is influenced by the character of the parties and their witnesses—factors more apparent to him than to us. The rule of appellate deference to trial court decisions is sound."

■ Here the trial court had to choose between two imperfect parents. We cannot say the denial of the father's motion to change custody was clearly erroneous, and accordingly we affirm.

BRADY, C. J., and WEIER, J., concur.